UNITED STATES of America,
Plaintiff–Appellee,

v.

Christopher TRIMBLE, also known as Christopher Lewis, Defendant–
Appellant.

No. 92–1191.

United States Court of Appeals,
Tenth Circuit.

Feb. 18, 1993.

private cause of action against physicians under   the Emergency Act." *Id.* at 1040 n. 1.

Philip R. Cockerille, Denver, CO, for defendant-appellant.

Charlotte J. Mapes (Michael J. Norton, U.S. Atty. with her on the brief), Asst. U.S. Atty., Denver, CO, for plaintiff-appellee.

Before ANDERSON, BARRETT and TACHA, Circuit Judges.

BARRETT, Senior Circuit Judge.

Christopher Trimble, a/k/a Christopher T. Lewis (Trimble) was charged in a two-count indictment with possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and using or carrying a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c). Trimble filed a motion to suppress evidence and statements. After a hearing, the district court denied the motion. Trimble then entered a conditional plea of guilty pursuant to a plea agreement which allowed him to pursue this appeal challenging the denial of his motion to suppress. *See* Fed.R.Crim.P. 11(a)(2). Trimble was sentenced to a term

of imprisonment of 98 months, with a supervised release of four years.

■ In reviewing a district court's denial of a motion to suppress, we must accept the court's findings of fact unless we determine that they are clearly erroneous. However, the ultimate determination of reasonableness under the Fourth Amendment to the United States Constitution is a conclusion of law which we review de novo. *United States v. Morales–Zamora,* 974 F.2d 149, 151 (10th Cir.1992); *United States v. Butler,* 904 F.2d 1482, 1484 (10th Cir.1990); *United States v. McKinnell,* 888 F.2d 669, 672 (10th Cir.1989); *United States v. Cooper,* 733 F.2d 1360, 1364 (10th Cir.), *cert. denied,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984).

*Facts*

The following recitation of facts is consistent with the findings of the district court which were based upon evidence adduced at the hearing on Trimble's motion to suppress. That hearing was conducted on March 20 and 23, 1992. The court heard testimony from Denver Police Officers Gerald L. Ford and Craig Thomas Moen; Denver Police Detectives Terry Vincent Demmel and Kerry Rich; Special Agent Kenneth Charles Coffey of the United States Treasury Department, Bureau of Alcohol, Tobacco & Firearms; Ms. Audrey Jarene Chapman, common law wife of Trimble; and Trimble.

On October 2, 1991, Denver Police Department Officers Ford and Moen, fully uniformed, were on duty in a marked police car when, about 10:40 a.m., they received a police radio call that a drug transaction was occurring in the 1400 block of Verbena Street. Moen, the driver, proceeded to the area immediately. When the officers arrived in the neighborhood, they observed a blue Ford Mustang containing three passengers being operated with expired license plates. The officers testified that it is routine police work to stop vehicles operating with expired license plates.

The patrol car, with its overhead lights on, made a U-turn and followed the Ford Mustang a short distance. The Ford Mus-

tang, being driven by Paul Estrada, stopped about mid-block in the 1300 block of Verbena Street. The police car stopped instantaneously. The passenger door of the Ford Mustang opened and Trimble, whom Officer Ford recognized, got out and walked a few steps away from the vehicle.

Ford exited the patrol vehicle and ordered Trimble to stop. Trimble looked back at Officer Ford but continued to walk. About twelve feet from the stopped vehicle, Trimble threw what appeared to be a brown vinyl or leather bag to the ground about five feet away from his person. Ford, with his firearm drawn, patted Trimble down and then observed Trimble put his hand to his waistband and pull out a container or pill bottle and begin to throw it. Ford grabbed the vial, put a handhold on Trimble, and advised him that he was under arrest. Ford, who had become familiar with the appearance of crack cocaine in the course of his police work, observed what he suspected to be rocks of crack cocaine in the vial.

Officer Ford took a few steps toward the brown bag on the ground. As he did, he heard a woman, later identified as Audrey Chapman, Trimble's common law wife, yelling something about giving her the money. Ford placed his foot on the bag and then picked it up. In doing so, he felt a heavy metal object inside which he believed to be a weapon. After handcuffing Trimble, Ford opened the bag and found some keys, a .25 caliber loaded semiautomatic pistol and $471 in currency. Officers Ford and Moen were not aware that, at the time of this incident, Trimble lived in a nearby home in the 1300 block of Verbena. No search warrant had been obtained for the vial, the bag or Trimble's person.

A federal complaint and arrest warrant were issued for Trimble on December 12, 1991. Thereafter, Bureau of Alcohol, Tobacco and Firearms Special Agents Coffey and Thorn went to the Denver City Jail and had Trimble released into their custody to be transported to the Marshal's Service at the federal courthouse on December 21, 1991. Because Trimble wanted to talk, Agent Thorn read him his *Miranda* advise-ments. Trimble responded that he understood his rights. The agents did not initiate any conversation with Trimble. Trimble asked the agents what was going on, and Agent Coffey informed him that he was subject to federal criminal action pertaining to the crack cocaine and the firearm. At some point during the short ride, Trimble volunteered "I ain't going to lie to you. That was my dope. That was my gun." These remarks were not in response to questioning by the agents.

*District Court's Findings–Conclusion*

In its written order, the district court concluded that the initial traffic stop-detention was valid and not pretextual and that Trimble had abandoned both the brown shoulder bag and the vial prior to Officer Ford seizing them:

> The Defendant was initially detained in the course of a valid traffic stop, as the vehicle in which Defendant was a passenger displayed expired license plates. There was no evidence presented that the stop was pretextual. The appropriate standard for determining the propriety of a traffic stop is an objective one. This Court finds the [sic] a reasonable officer acting under similar circumstances would have made such a stop. It was also reasonable for Officer Ford to order Defendant to stop, upon seeing him alight from the back seat of the vehicle to attempt to leave the scene. When the facts and circumstances surrounding the situation are sufficient to warrant the belief by a reasonable police officer that the party to be stopped has committed or is in the process of committing an offense, the stop is appropriate. *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir.1990). Such a determination is based upon the totality of the circumstances at the time. *United States v. Watson*, 423 U.S. 411, 428 [96 S.Ct. 820, 830, 46 L.Ed.2d 598] (1976).
>
> This issue in particular (abandonment) was the subject of supplemental briefing. The act by the Defendant of dropping the vial, or attempting to drop the vial, is consistent with abandonment. The Court concludes that in light of all the

surrounding circumstances, Defendant had abandoned both the shoulder bag and the vial prior to the officer seizing them. Where a person abandons an object, he loses his reasonable expectation of privacy and there is no search where there is no reasonable expectation of privacy. *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir.), *cert. denied,* 464 U.S. 859 [104 S.Ct. 184, 78 L.Ed.2d 163] (1983). Defendant's actions in this case were consistent with the abandonment of both objects, notwithstanding his contention in the supplemental brief that he intended to drop the vial at his feet. Upon retrieving the vial, Officer Ford viewed its contents without opening the vial, which he determined, as a result of his training, contained chunks of crack cocaine. No search warrant was required to open the vial, as its contents were in plain view.

(R., Vol. I, Tab 4 p. 2)

### Appellate Contentions

On appeal, Trimble argues that (1) the initial stop of Trimble was illegal, (2) seizure of the pill bottle was illegal, (3) opening the pill bottle was an illegal search, (4) seizure of the bag was illegal, (5) opening of the bag was an illegal search, and (6) the statements allegedly made by Trimble on December 20, 1991, are inadmissible.

### I.

■ Trimble does not challenge the legality of the initial stop of the Ford Mustang because of an expired license plate. *See United States v. Corral,* 899 F.2d 991, 994 (10th Cir.1990) (police officer's observation of an expired license plate and the initial stop valid, not pretextual). And the district court's oral finding/conclusion that the initial stop was not a pretextual stop is not challenged on appeal.

Trimble contends, however, that Officer Ford unreasonably expanded his lawful authority when he stopped Trimble at gunpoint after Trimble exited the Ford Mustang and took a few steps away from the car. He argues that neither Ford nor Moen could articulate any reasonable suspi-

cion for stopping him, patting him down, seizing a tiny bottle from his hand, or seizing and opening the bag which he had thrown to the ground. He relies on *United States v. Walker,* 933 F.2d 812 (10th Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992) and *United States v. Guzman,* 864 F.2d 1512 (10th Cir.1988) for the rule that a stop for a traffic violation cannot be expanded to investigate other crimes unless the police officers have a reasonable suspicion, based on rational inferences from articulable facts, that the suspect is engaged in criminal activity.

This argument overlooks the possibility that Officers Ford and Moen may have been informed during the course of their investigation of the expired license plate violation, that Paul Estrada was driving the Ford Mustang at the request of its owner, Trimble, and that only Trimble was aware that the license had expired. In any event, the Supreme Court has held that a routine traffic stop is analogous to the investigative detention sanctioned in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984), the Court held that during a routine traffic stop, as during a *"Terry* Stop," a police officer may "ask [a] detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicion."

The district court analyzed the stop and frisk of Trimble on the basis that within the course of some thirty seconds the scope of objective, reasonable suspicion advanced from one to three levels. The first level, of course, was the stop of the Ford Mustang because of expired license plates. The second level was the *Terry* stop and frisk of Trimble, based on: Ford's observation of Trimble exiting the Ford Mustang and proceeding to walk away from the scene; Ford's recognition of Trimble as someone he believed he had arrested within the past two years; and, finally, Ford seeing Trimble toss the brown bag to the ground. The district court observed that when Trimble

exited the Ford Mustang and proceeded to walk away, he was leaving the scene of a police stop. The court reasoned, and we agree, that Officer Ford was within his authority to stop Trimble for identification-questioning, as in *Terry*. (R., Vol. II, pp. 133–37). The third level was reached when Ford observed what he believed to be crack cocaine in the vial Trimble attempted to throw away. At that point, the district court observed, there was probable cause to arrest Trimble. *Id.* at 133. We agree. In *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 224, 13 L.Ed.2d 142 (1964), the Court explained that "[p]robable cause exists where the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense."

Counsel for Trimble argued at the motion hearing that Trimble, who was not driving the Ford Mustang, was entitled to walk away from the scene because he had nothing to do with the expired license plates. (R., Vol. II, p. 136). The trial court's view, with which we agree, was that when Trimble proceeded to leave the scene of the stop, Officer Ford was entitled to detain him for purposes of identification in order to ascertain "what's going on." *Id.* at 137. Such action was in keeping with good police work, and the intrusion was minimal. As observed, *supra*, an investigation may have disclosed that the Ford Mustang was registered to Trimble and that Estrada was simply driving the vehicle at Trimble's request. Thus, in an objective sense, Trimble's attempt to depart the scene of the stop was an attempted flight.

## II.

Trimble contends that seizure of the pill bottle was illegal inasmuch as it was effected without a search warrant and was not (1) incident to a valid arrest, (2) incident to a valid *Terry* stop, or (3) abandoned.

The district court found, and the record supports such findings, that when Officer Ford ordered Trimble to stop:

... the defendant looked back at the officer and continued walking. Approximately twelve feet from the stopped vehicle, the Defendant stopped walking and then tossed a shoulder bag toward a person who had just come from the direction of the house in front of which the vehicle and the police cruiser were parked. This person, identified as Audrey Chapman, the Defendant's wife, testified at the motions hearing. The shoulder bag landed on the lawn, several feet away from Defendant. At this same time, Defendant removed an amber vial from his pants pocket and attempted to drop it to the ground. Officer Ford, who was very near the Defendant by this time, either took the vial from Defendant's grasp or caught it as it was falling to the ground. The vial is one similar to those used in dispensing prescription drugs. The vial is translucent, and its contents were visible. Officer Ford, on examining the container, could identify the contents which he described as "crack cocaine rocks." Officer Ford then proceeded to the location of the shoulder bag which had been thrown away by the Defendant.

(R., Vol. I, Tab 4, pp. 1–2).

These findings are not clearly erroneous. Furthermore, they support the district court's conclusions that, based on the totality of the circumstances, the actions of Officer Ford were supported by a reasonable belief that Trimble had committed or was in the process of committing an offense.

In *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir.), *cert. denied*, 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990), cited and relied upon by the district court, we held:

Because the determination that probable cause exists is a predominantly factual analysis, we will not disturb the trial court's finding of probable cause unless, viewing all the evidence presented at trial in the light most favorable to the

government, the court's finding is clearly erroneous.

Here, the encounter escalated within a matter of seconds, from a simple traffic stop to a crack cocaine possession case. When Officer Ford observed the amber colored pill vial containing what he recognized to be "rock" or crack cocaine, which Trimble had removed from his waistband and either had abandoned or was attempting to discard, Officer Ford had probable cause to arrest Trimble for possession of a controlled substance. The district court's finding/conclusion that Trimble had abandoned both the shoulder bag and the vial prior to the seizures by Ford finds support in the record and is not clearly erroneous.

■ A finding of abandonment of property is reviewed under the clearly erroneous standard. In *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983), we observed:

In *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960), the Supreme Court declared that the government's warrantless seizure of abandoned property did not violate the Fourth Amendment. *Id.* at 241, 80 S.Ct. at 698. Since *Abel*, the circuit courts have examined the issue, and the following guidelines to the "abandoned property" exception to the Fourth Amendment's warrant requirement have emerged. When individuals voluntarily abandon property, they forfeit any expectation of privacy in it they might have had. *United States v. Berd*, 634 F.2d 979, 987 (5th Cir.1981). Therefore, a warrantless search or seizure of abandoned property is not unreasonable under the Fourth Amendment. E.g., *United States v. Diggs*, 649 F.2d 731, 735 (9th Cir.), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981); *Berd*, 634 F.2d at 987; *United States v. D'Avanzo*, 443 F.2d 1224, 1225–26 (2d Cir.), *cert. denied*, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971). The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary. *United*

States v. Colbert, 474 F.2d 174, 176 (5th Cir.1973); *see generally*, e.g., *Berd*, 634 F.2d at 987; *United States v. Canady*, 615 F.2d 694 (5th Cir.), *cert. denied*, 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); *United States v. Williams*, 569 F.2d 823 (5th Cir.1978); *D'Avanzo*, 443 F.2d 1224.

The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. *Diggs*, 649 F.2d at 735. This determination is to be made by the objective standards. *United States v. Kendall*, 655 F.2d 199, 201 (9th Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982). An expectation of privacy is a question of intent, which "may be inferred from words spoken, acts done, and other objective facts." *Kendall*, 655 F.2d at 202 (quoting *Williams*, 569 F.2d at 826). "A finding of abandonment is reviewed under the clearly erroneous standard," *Diggs*, 649 F.2d at 735, and the surrounding circumstances must be examined. *United States v. Morgan*, 936 F.2d 1561, 1570 (10th Cir.1991).

We hold that the district court's finding that Trimble had, in light of all the surrounding circumstances, voluntarily abandoned both the shoulder bag and the vial prior to Officer Ford's seizure of them, is not clearly erroneous. Accordingly, we hold that the subsequent warrantless searches by Ford did not violate Trimble's Fourth Amendment rights.

### III.

■ Trimble argues that the statements he allegedly made to Agents Coffey and Thorn on December 21, 1991, that it was his gun and his dope and that he had been selling crack because he got involved with the wrong people, are inadmissible because (1) the illegal arrest invalidated any alleged statements, *see United States v. Maez*, 872 F.2d 1444 (10th Cir.1989), (2) no proper *Miranda* warnings were given by the agents or understood by Trimble, (3) no attorney was present, even though Trimble had expressed his wish to be represented by counsel as early as October 3, 1991, and

Agents Coffey and Thorn were aware that Trimble had counsel in the state court, and (4) the statements were involuntary and coerced under the totality of the circumstances. (Trimble was then age 21, black and not well educated).

Agent Coffey testified that after he and Agent Thorn picked Trimble up at the City and County Jail to transport him to the custody of the Marshal's Service at the Federal Courthouse in Denver, he served a federal arrest warrant on Trimble. Neither he nor Agent Thorn had any intention of interviewing Trimble. Enroute to the courthouse, however, Trimble asked the agents what was going on; he was very confused about what was happening. (R., Vol. II, p. 68). Coffey then informed Trimble that he would be advised of his rights. *Id.* Thereafter, Agent Thorn read Trimble his *Miranda* warnings from the advisement card and Trimble acknowledged that he understood his rights.

Trimble again inquired as to what was going on. *Id.* at 68–69. Agent Coffey informed Trimble that his agency was pursuing criminal action against him through the United States Attorney's office pertaining to Trimble's possession of the crack cocaine and the firearm. *Id.* Trimble was curious about penalties which the agents tried to explain to him. Thereupon, Trimble stated "I ain't going to lie to you. That was my dope. That was my gun."

The district court found that Trimble had voluntarily and knowingly waived his *Miranda* rights:

> The defendant was advised of the [sic] federal officers were her [sic] to take him, got in the federal officer's government car. They were transporting him to the marshal's office for booking after having had him released to their custody.
>
> Apparently, the defendant commenced voluntary—making voluntary questions of the agents such as what's this all about, attempting to talk to the agents.
>
> Upon this event, Agent Thorn gave the defendant a verbal, a Miranda advisement. No forms were available. They were in the car and moving at the time [Agent Coffey was driving and Agent

Thorn was in the back seat with Trimble]. Agent Thorn gave him a verbal advisement. He continued to talk, apparently indicating he wanted to cooperate, and the court finds there was a knowing waiver at that time of any further Miranda rights that—any further rights under Miranda that he might have had at the time subsequent to the time Agent Thorn advised.

> Defendant continued to try to talk, made admissions to the agents such as it was his dope, admitting it was his dope and his gun.
>
> He continued to talk to them. They were not intentionally interrogating him. This was not a questioning session. They did not know whether the defendant had an attorney or not.
>
> At any rate, he had waived, knowingly waived that by waiving his Miranda rights. He did not at any time advise him he had an attorney or that he wished an attorney.
>
> Accordingly, there is no—and there is no issue of any voluntariness on that occasion. The defendant doesn't raise the issue of voluntariness on that occasion.
>
> The defendant was actually doing the questioning more than the agents were questioning him. It was more response on their part to his questions.

(R., Vol. II, pp. 148–49).

We hold that the district court's findings are not clearly erroneous. *See United States v. Morgan,* 936 F.2d 1561, 1570 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992). We conclude and hold that Trimble's statements were not the result of threats or coercion on the part of Agents Coffey and Thorn but, instead, were freely and voluntarily uttered. *See United States v. Lux,* 905 F.2d 1379, 1382 (10th Cir.1990); *United States v. Chalan,* 812 F.2d 1302, 1307–08 (10th Cir.1987). In *Lux,* we held that the trial court's finding that Lux's statements were freely and voluntarily made was not clearly erroneous, notwithstanding the fact that Detective Burroughs lied to Lux about her codefendant's statement and leaned

over and hit his fist on the table and accused Lux of lying. We agreed with the trial court's conclusion that these actions were not so egregious as to warrant a finding that they overbore Lux's will. In *Chalan,* the court held that the defendant's statements to law enforcement officers were voluntarily given even though the defendant was urged by FBI agents and his mother to tell the truth about a robbery-murder, inasmuch as the defendant had been specifically informed at the beginning of the interview that he was not obligated to answer any questions, no one physically threatened the defendant, and the environment was not coercive.

In *United States v. Giles,* 967 F.2d 382 (10th Cir.1992), we recognized the rule laid down in *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981), that once an accused has invoked his right to counsel, only the accused may permissibly initiate further interrogation. Unlike *Giles,* Trimble initiated the questioning of Agents Coffey and Thorn who simply responded thereto. The agents did not interrogate Trimble. *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980) teaches that interrogation is either "... words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response." Here, unlike the situation in *United States v. Kelsey,* 951 F.2d 1196 (10th Cir.1991), Agents Coffey and Thorn did not initiate questioning of Trimble.

In the instant case, the statement made by Trimble on December 21, 1991, to Coffey and Thorn was neither police-initiated nor the result of police interrogation. We realize that Trimble testified that he did not recall being advised of his rights on December 21, 1991, or telling Coffey and Thorn that he was not going to lie to them and that the crack cocaine and gun were his. However, he did recall asking the agents questions about where he was going and what was going to happen to him. (R., Vol. II, p. 120). This simply created a credibility conflict between Trimble's version and that of Agent Coffey which was left for resolution by the trial court. In

reviewing a denial of a motion to suppress, the trial court's findings of fact must be accepted by this court unless clearly erroneous, with the evidence viewed in the light most favorable to the district court's findings. *United States v. Benitez,* 899 F.2d 995, 997 (10th Cir.1990); *United States v. Cooper,* 733 F.2d 1360, 1364 (10th Cir.), *cert. denied,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984); *United States v. Obregon,* 748 F.2d 1371, 1376 (10th Cir. 1984).

We AFFIRM.