**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rafael HERNANDEZ, Defendant–
Appellant.**

No. 92–2254.

United States Court of Appeals,
Tenth Circuit.

Oct. 15, 1993.

Richard Jewkes, El Paso, TX, for defendant-appellant.

Don J. Svet, U.S. Atty., Presiliano A. Torrez, Asst. U.S. Atty., Albuquerque, NM, for plaintiff-appellee.

Before MCKAY, Chief Judge, ENGEL * and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Rafael Hernandez, after entering a conditional guilty plea in district court to possession with intent to distribute more than 500 grams of cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(B), appeals the court's denial of his motion to suppress evidence. Defendant alleges that the district court erroneously denied his motion to suppress because the seizure of his backpack violated the Fourth Amendment. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The facts in this case are essentially undisputed by the parties, and are consistent with the district court's factual findings. On June 15, 1992, Defendant was a passenger on a Greyhound bus that entered the inspection area at the permanent border patrol checkpoint near Truth or Consequences, New Mexico. The bus entered the checkpoint at approximately three o'clock in the morning and was sent to the secondary inspection site by United States Border Patrol agents.

At the secondary inspection site, two agents boarded the bus and began conducting an immigration inspection of the bus's eighteen to twenty passengers. Border Patrol Agent Eliseo Silva, working from the front to the back of the bus, questioned various passengers regarding their citizen-

ship. As he worked his way back, he noticed a blue backpack in an overhead storage compartment with no one sitting beneath it. Thinking that this was unusual, because in his experience passengers usually place their carry-on luggage directly above where they sit, Silva asked three persons near the bag if it belonged to them. After they all replied that it did not, Silva asked several times in a loud voice, without ever touching the backpack but while pointing towards it, if it belonged to anyone, making an effort to scan the entire bus and make eye contact with all the passengers. After once again receiving no response, Silva picked up the backpack and holding it in the air, asked again who owned it. Again, he received no response.

While he was holding the backpack, Agent Silva felt bundles or packages within it, and because no one claimed the backpack, he took it outside to be sniffed by a trained narcotics-sniffing dog. The dog alerted to the backpack, and agents discovered two bundles of cocaine in the backpack upon opening it.

Silva and assisting agent Jose Alvarado then boarded the bus in a renewed effort to identify the owner of the backpack. Defendant, who was sitting approximately seven or eight rows behind the backpack and on the opposite side of the aisle, was identified by a passenger sitting near the backpack as its owner. The agents approached Defendant and asked him to step from the bus, at which time Defendant denied ownership.

From these facts, the district court found that Defendant lacked an expectation of privacy in the backpack. The court based this finding on the fact that the bus was not crowded, and as a result, Defendant was not required to place the backpack seven or eight rows away, and on the fact that Defendant did not identify the backpack as his own in response to Agent Silva's numerous questions regarding ownership. Thus, the court concluded, Defendant had abandoned the backpack and did not have standing to chal-

* The Honorable Albert J. Engel, United States Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

lenge its search.[1]

■ Before we address the issue of whether Defendant abandoned his backpack, we must first address whether Agents Silva and Alvarado violated Defendant's Fourth Amendment rights by stopping the bus, referring it to the secondary checkpoint, entering the bus and questioning the bus's passengers about the backpack—actions which resulted in the agents' determination that the backpack was abandoned. We therefore briefly summarize the law regarding permanent border checkpoint stops.

■ A routine permanent checkpoint stop must be brief and unintrusive, and "generally involves questions concerning the motorist's citizenship or immigration status, and a request for documentation." *United States v. Rascon–Ortiz*, 994 F.2d 749, 752 (10th Cir. 1993) (citing *United States v. Martinez– Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)). "A cursory visual inspection of the vehicle is also routine," *id.* (citing *Martinez–Fuerte*, 428 U.S. at 558, 96 S.Ct. at 3083), and "a few brief questions concerning such things as vehicle ownership, cargo, destination, and travel plans may be appropriate if reasonably related to the agent's duty to prevent the unauthorized entry of individuals into this country and to prevent the smuggling of contraband." *Id.* " 'The Fourth Amendment does not require police officers to close their eyes to suspicious circumstances.' " *Id.* (quoting *United States v. Johnson*, 895 F.2d 693, 696 (10th Cir.1990)). "[I]f an agent observes 'suspicious circumstances,' the agent may briefly question the motorist concerning those suspicions and ask the motorist to explain." *Id.* at 753 (citing *United States v. Sanders*, 937 F.2d 1495, 1500 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992)).

"While there is no single definition of what constitutes a suspicious circumstance, border patrol agents are given deference in relying upon their law enforcement training and past experience in deciding whether a suspicious circumstance exists." *Id.* (citing *Sanders*, 937 F.2d at 1500). It is important to note that a "suspicious circumstance" is not equivalent to the "reasonable suspicion" standard. *Id.* at 753 n. 6. "The presence of a suspicious circumstance allows a border patrol agent to ask a few additional questions concerning the suspicion during the course of a routine customs inspection," without the presence of "the more rigid Fourth Amendment requirements of probable cause or reasonable suspicion." *Id.*

■ The rules regarding permanent border patrol checkpoints do not change merely because Defendant was on board a bus. When a bus enters the checkpoint and is referred to the secondary inspection location, border patrol agents are permitted to board the bus, question its passengers regarding citizenship and immigration status, make a brief visual inspection of their surroundings, and question the passengers regarding suspicious circumstances. *See United States v. Ray*, 973 F.2d 840, 842–43 (10th Cir.1992) (border patrol agents had authority to question bus passenger at permanent checkpoint, even without individualized suspicion, since bus was stopped as result of routine immigration inspection and defendant was in public passenger compartment of bus). Because agents Silva and Alvarado did nothing to exceed the scope of a routine checkpoint stop prior to determining that the backpack was abandoned, they did not violate Defendant's Fourth Amendment rights by entering the bus, by making a brief visual inspection which resulted in the observation of suspicious circumstances surrounding the backpack, or by asking questions to determine the backpack's owner.

---

1. The district court made an alternative finding that even if Defendant did have standing to challenge the search, the court did not believe that Silva had seized the backpack within the meaning of the Fourth Amendment by merely holding it in the air to ask further questions regarding ownership. Thus, the district court found that Silva's detection of the bundles gave him reasonable suspicion to believe the backpack contained contraband and to subject the backpack to a dog sniff. Then, at the point when the dog alerted to the backpack, the agents had probable cause to search it. Because we agree with the district court's determination that the backpack was abandoned before Silva touched it, we do not address this alternative finding.

A warrantless search and seizure of abandoned property is not unreasonable under the Fourth Amendment. *United States v. Trimble,* 986 F.2d 394, 399 (10th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 2943, 124 L.Ed.2d 691 (1993); *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir.), *cert. denied,* 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983). Thus, if Agents Silva and Alvarado accurately determined, through their routine checkpoint questions, that the backpack was abandoned, the agents' search did not violate the Fourth Amendment. We review the trial court's determination of abandonment for clear error. *Trimble,* 986 F.2d at 399.

The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. *Id.; Jones,* 707 F.2d at 1172. This determination is made by objective standards. *Trimble,* 986 F.2d at 399; *Jones,* 707 F.2d at 1172. An expectation of privacy is a question of intent which may be inferred from words, acts, and other objective facts. *Trimble,* 986 F.2d at 399; *Jones,* 707 F.2d at 1172. The abandonment must be voluntary. *United States v. Ward,* 961 F.2d 1526, 1535 (10th Cir.1992); *United States v. Morgan,* 936 F.2d 1561, 1570 (10th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992). For example, an abandonment is not voluntary when it results from a Fourth Amendment violation. *United States v. King,* 990 F.2d 1552, 1564 (10th Cir.1993); *Ward,* 961 F.2d at 1535. However, police pursuit or investigation at the time of abandonment of property, without more, does not of itself render abandonment involuntary. *Trimble,* 986 F.2d at 399; *Morgan,* 936 F.2d at 1570; *Jones,* 707 F.2d at 1172.

We conclude that the district court's determination that Defendant had abandoned his backpack was not clearly erroneous. Defendant elected to distance himself from the backpack upon boarding the bus and repeatedly failed to acknowledge ownership of the backpack after Agent Silva repeatedly questioned the bus passengers regarding the backpack's ownership. Furthermore, we have already held that the agents' actions prior to determining the backpack was abandoned did not violate the Fourth Amend-

ment, *see supra,* making Defendant's abandonment voluntary. Thus, we affirm the district court's determination that Defendant lacked standing to complain of a Fourth Amendment violation because he voluntarily abandoned the backpack; therefore, we affirm the district court's denial of Defendant's motion to suppress.

AFFIRMED.