51 F.3d 287
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel Raymond FRAZIER, Defendant-Appellant.
 No. 94-3119.
(D.C. No. 93-20083-01)
 United States Court of Appeals, Tenth Circuit.
 March 27, 1995.
 
 1
 Before BRORBY, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and BURCIAGA, Senior District Judge.[2]
 
 
 2
 This case was set for oral argument on November 18, 1994. Shortly prior thereto, the appellant moved to waive oral argument. The appellee had previously indicated that it did not request oral argument. After examining the briefs and appellate record, this panel has determined to honor the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Daniel Raymond Frazier appeals his conviction and sentence imposed on a conditional plea of guilty to a one-count indictment charging him with unlawfully possessing with an intent to distribute approximately three kilograms of cocaine, in violation of 21 U.S.C. 841(a)(1). On appeal, Frazier challenges the propriety of the district court's order denying his motion to suppress the use at trial of the cocaine taken from his possession by officers of the Kansas City, Kansas Police Department, and, in connection therewith, asks that we hold that the district court erred in denying his motion to suppress, and that we reverse his conviction and sentence and remand with directions that the district court allow him to withdraw his conditional plea of guilty, as provided for by Fed.R.Crim.P. 11(a)(2). We affirm. Some background is in order.
 
 
 4
 The Kansas City, Kansas police routinely meet the Los Angeles, California bus when it arrives at the bus depot in Kansas City, Kansas. On November 17, 1993, Officers Schafer, Thoman and Wooley of the Kansas City, Kansas Police Department met the 12:40 p.m. bus from Los Angeles. Officer Schafer espied Frazier departing the bus carrying two bags, and after Frazier made a telephone call, Schafer, acting alone, did an "interdiction" with Frazier.[3]
 
 
 5
 At the hearing on the motion to suppress, Schafer testified that while he and Frazier were inside the bus depot he, after identifying himself as an officer, asked Frazier, point-blank, if he had narcotics, firearms or contraband in his bags. Frazier answered that he did not. Schafer then asked Frazier if he would voluntarily consent to a search of the bags. Frazier inquired as to whether the officer had a search warrant. Officer Schafer stated that he did not and that any search would have to be voluntary. At that point Frazier declined to consent to a search. Schafer testified that during this initial encounter inside the bus depot, Frazier volunteered that one bag containing china belonged to his brother and that his brother was coming to pick him up and that "we could wait 'til his brother got there and he would let us search the bag." Thereafter, Schafer and Frazier went outside the bus depot and waited for the brother to arrive. By this time Officer Thoman, who had interdicted another departing passenger, and Officer Wooley joined Schafer and Frazier on the sidewalk outside the bus depot. At this point in time Officer Schafer had been conversing with Frazier for about five minutes.
 
 
 6
 Moments later a car entered the passenger pickup area, but the driver, instead of stopping, drove on by. Frazier then made a second telephone call. After that he consented to have one bag, which he admitted belonged to him, searched, but the search only revealed clothing and personal items. Frazier then left the depot on foot, carrying the bag which had been searched, but leaving behind the bag which Frazier told the officers was not his, but his brother's. After Frazier disappeared from the officers' view, a search was made of the second bag, which revealed the cocaine which formed the basis for the present prosecution. Frazier was later arrested.
 
 
 7
 At the hearing on the motion to suppress, the three officers testified, as did the defendant. The district court, in denying the motion to suppress, stated at the outset of its ruling that the facts testified to by the three officers were "true and [were] the true facts in the case." The district court went on to speak, inter alia, as follows:
 
 
 8
 Now, the defendant's claim that the persistence of the officers by staying with him after he had declined to cooperate, that that amounts to a seizure which invalidates the subsequent search of the gray bag is simply not sustainable in the Court's opinion. The Court finds that under the facts, that the encounter continued as a consensual encounter, and Officer Schafer made it plain that the defendant's cooperation would be voluntary, and he really remained at the defendant's side and continued remaining with the defendant after the defendant had told him that the bag belonged to his brother and that his brother could consent or would consent to the search of the bag in question.
 
 
 9
 There is absolutely no physical restraint placed upon the defendant nor was his freedom of movement limited in any way. And in making that finding, the Court is considering the tests as outlined in United States versus Mendenhall, which is United States Supreme Court case 486 United States 544, in which there are four circumstances that are to be considered to indicate whether or not there was a seizure that involved Fourth Amendment protection, that is where a person is considered seized, if a reasonable person would believe that--or would not believe that he was free to leave.
 
 
 10
 These four circumstances are the threatening presence of several officers, the display of weapons, the use of language or tone of voice which conveys the message that compliance is requested and any physical touching.
 
 
 11
 The Court finds under all the facts that have been found to exist, that none of these were present and that there was not a seizure invoking Fourth Amendment protection.
 
 
 12
 On appeal counsel frames the issue here to be resolved as follows:
 
 
 13
 Did the Trial Court err in determining that appellant's encounter with police remained consensual for its duration, and did the court also err in determining that any reasonable suspicion existed to continue the police-citizen encounter after appellant declined to allow his luggage searched?
 
 
 14
 In reviewing a district court's denial of a motion to suppress evidence, we must accept the district court's findings of fact unless they are clearly erroneous, and we must also view the evidence in a light most favorable to the government. United States v. Maestas, 2 F.3d 1485, 1490 (10th Cir.1993). However, "[t]he ultimate determination of Fourth Amendment reasonableness is a conclusion of law which we review de novo." United States v. Allen, 986 F.2d 1354, 1356 (10th Cir.1993).
 
 
 15
 At the outset, counsel concedes that there was no Fourth Amendment violation when Officer Schafer confronted appellant and asked questions concerning his identity, and inquired as to whether he was carrying drugs, firearms or other contraband, and further inquired as to whether he would voluntarily consent to a search of his bags. Florida v. Bostick, 501 U.S. 429 (1991). In United States v. Little, 18 F.3d 1499, 1506 (10th Cir.1994), we held that "the asking of 'incriminating questions' is irrelevant to the totality of the circumstances" surrounding a "police-citizen" encounter.
 
 
 16
 Counsel's basic position, as we understand it, is that although there was no Fourth Amendment violation resulting from Officer Schafer's encounter with appellant while inside the bus depot, there was a Fourth Amendment violation when Schafer followed him outside the bus depot to wait for him to be picked up by his brother. This argument ignores the fact that, according to Officer Schafer, appellant invited Officer Schafer to wait with him until his brother arrived and said that his brother could then consent to a search of the bag which did not belong to the appellant. As indicated, the district court believed Officer Schafer's testimony, and such formed the basis for the district court's conclusion that the continuing "encounter" by the police outside the bus depot was still consensual, as admittedly was the encounter inside the bus depot.
 
 
 17
 We agree with the district court that there was no Fourth Amendment violation by virtue of the fact that Officer Schafer and the other two officers, at appellant's invitation, waited with appellant outside the bus depot for his brother to pick him up. Such being the case, we need not here consider the district court's alternative finding that by the time they were all standing on the sidewalk outside the bus depot, waiting for appellant's brother to arrive, the police had "reasonable suspicion" to make a "Terry stop" under Terry v. Ohio, 392 U.S. 1 (1968).
 
 
 18
 As above noted, when appellant's "brother" drove past, without stopping, appellant placed another telephone call and consented to a search of the bag which he said belonged to him, which search, as noted above, revealed only clothing and personal items. Appellant thereafter simply "walked off" leaving the other bag, for which he claimed no responsibility, lying on the sidewalk. We note, parenthetically, that Schafer estimated the time between his initial encounter with Frazier and the time when Frazier walked away leaving behind his "brother's" bag was 20 minutes. In this general regard, Officer Schafer testified at the hearing on the motion to suppress that at this point in time, Frazier was free to leave, as in fact he did, and that if he had taken both bags he would not have been stopped. So, at that point appellant had abandoned that particular bag, and the district court stated, "[t]he officers' testimony is entirely consistent that the defendant had abandoned the bag in a public place, which was accessible to the general public, and apparently wanted no more to do with the bag." The district court concluded, therefore, that the search of the bag was a search of abandoned property which in no way violated the Fourth Amendment.
 
 
 19
 A district court's finding of abandonment of property is reviewed under the clearly erroneous standard. United States v. Trimble, 986 F.2d 394, 399 (10th Cir), cert. denied, 113 S.Ct. 2943 (1993). The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. United States v. Trimble, 986 F.2d at 399; United States v. Jones, 707 F.2d 1169, 1172 (10th Cir.), cert. denied, 486 U.S. 859 (1983). That determination is made by objective standards. Trimble, 986 F.2d at 399; Jones, 707 F.2d at 1172. An expectation of privacy is a question of intent which may be inferred from words, acts, and other objective facts. Trimble, 986 F.2d at 399; Jones, 707 F.2d at 1172. Moreover, the abandonment must be voluntary. United States v. Ward, 961 F.2d 1526, 1535 (10th Cir.1992), overruled on other grounds, United States v. Little, 18 F.3d 1499 (10th Cir.1994). An abandonment is not voluntary, for example, when it results from a Fourth Amendment violation. United States v. King, 990 F.2d 1552, 1564 (10th Cir.1993). However, police pursuit or investigation at the time of abandonment of property, without more, does not itself render the abandonment involuntary. Trimble, 986 F.2d at 399; Jones, 707 F.2d at 1172.
 
 
 20
 We conclude, as apparently the district court did, that appellant did not have any reasonable expectation of privacy in the grey bag. His own words, in disclaiming ownership of the bag or knowledge of its contents, and his acts, in departing the area and leaving the bag in a public place, evidence an intent to abandon the bag.
 
 
 21
 Appellant argues, however, that although he may have abandoned the bag, it certainly wasn't voluntary since it was the product of what he asserted to be an unlawful detention. Based on our conclusion above that appellant was not seized for purposes of the Fourth Amendment by the actions of the officers, this argument is untenable. As the previous cases of this Circuit make clear, mere police presence is insufficient to render the abandonment involuntary. Accordingly, we agree with the district court that "search of abandoned property is [in] no way a violation of the Fourth Amendment."
 
 
 22
 Judgment affirmed.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable Juan G. Burciaga, Senior District Judge for the District of New Mexico, sitting by designation. Judge Burciaga died on March 5, 1995
 
 
 [3]
 Officer Schafer explained what an "interdiction" means as follows:
 Basically what it is is a team of us will go up in plain clothing and we will talk to passengers as they come off the bus on a voluntary basis, if they'll let us check their bags for narcotics. If we find anything, we'll make arrests. Other than that, if they don't have anything, they'll be on their way.
 Transcript of Hearing on Motion to Suppress Evidence at 4, United States v. Frazier, No. 94-3119, Record on Appeal Vol. 2.