52 F.3d 338
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Jesus AVILA, Defendant/Appellant.
 No. 94-3273.
 United States Court of Appeals, Tenth Circuit.
 April 18, 1995.
 
 1
 AFFIRMED.
 
 
 2
 Before EBEL and KELLY, Circuit Judges, and BRATTON*, District Judge.
 
 
 3
 ORDER AND JUDGMENT**
 
 
 4
 On August 1, 1994, Jesus Avila entered a conditional plea of guilty to Counts 5 and 8 of an eight-count Indictment. Mr. Avila preserved his right to appeal the district court's denial of his motion to suppress the physical evidence that formed the basis for his conviction on Count 5. The only issue on appeal is whether the district court erred in finding Mr. Avila lacked standing to contest the warrantless search of a safe found at his residence. For the reasons below, we affirm the district court's denial of Mr. Avila's motion to suppress.
 
 I. Factual Background
 
 5
 On August 11, 1993, officers from the Wichita Police Department arrested Moises Martinez for a drug-related offense. Prior to his arrest, police officers observed Mr. Martinez drive to several locations in the city of Wichita, including an apartment complex. However, the officers did not know which apartment, if any, Mr. Martinez entered.
 
 
 6
 After Mr. Martinez' arrest, Detectives Green and Stinson went to the apartment complex to investigate. The detectives spoke to the apartment manager. The manager told them he was familiar with Mr. Martinez. He claimed Mr. Martinez' wife had previously rented apartment No. 232, and that Mr. Martinez was paying the rent for apartments No. 118 and No. 232. However, the manager reported Mr. Martinez did not live in the apartments. According to the manager, Mr. Martinez' brother lived in apartment No. 232.
 
 
 7
 With this information, the detectives proceeded to apartment No. 118. No one answered the door at apartment No. 118. They proceeded to apartment No. 232 and knocked on the door. Janice Anderson came to the window and spoke to Detective Green. The detectives identified themselves as narcotics detectives conducting a follow-up investigation. Ms. Anderson allowed them into the apartment. Ms. Anderson's son and Mr. Avila were in the apartment.
 
 
 8
 The detectives explained they were investigating Mr. Martinez. Mr. Avila and Ms. Anderson admitted knowing Mr. Martinez but claimed they had not seen him for two or three days. Because the detectives believed Mr. Martinez had been at the apartment hours earlier, they asked if it had been that long since they had seen him. Mr. Avila and Ms. Anderson again claimed it had been two or three days since they had seen Mr. Martinez. Mr. Avila also claimed Mr. Martinez was renting the apartment but asserted he was paying rent to Mr. Martinez to live there.
 
 
 9
 The detectives asked Mr. Avila and Ms. Anderson for consent to search the apartment. They gave permission to search but refused to sign a consent to search form. The detectives explained the purpose of a written consent and once again asked for permission to search the apartment. The detectives told them they would be looking for drugs, weapons, currency and documents. Mr. Avila once again consented to the search but did not sign the consent form. Prior to the search, Ms. Anderson denied ownership of anything in the apartment, except for a suitcase sitting beside the front door. Mr. Avila also denied ownership of a stereo and two small speakers.
 
 
 10
 Detective Stinson searched the apartment while Detective Green stayed with Mr. Avila and Ms. Anderson. Detective Green asked Ms. Anderson for consent to search her purse. She consented. In her purse, he found a baggie containing marijuana and what he believed to be cocaine residue inside an eyeglass case. Detective Green then arrested her.
 
 
 11
 Detective Stinson continued the search and found a bag of cocaine inside a shoe box. Ms. Anderson told the detectives the shoe box belonged to Mr. Avila. The detectives arrested Mr. Avila. Both claimed there were no more drugs in the apartment and repeated their willingness to allow them to search. At this time, both Ms. Anderson and Mr. Avila were in custody, however, the detectives failed to advise them of their Miranda rights.
 
 
 12
 During the search, Detective Stinson spotted a safe outside the bathroom, that he testified was in plain view. The detectives questioned Mr. Avila and Ms. Anderson regarding the ownership of the safe. Mr. Avila and Ms. Anderson denied any knowledge of a safe. The detectives told Mr. Avila and Ms. Anderson they would have to force the safe open if they did not tell them the combination. Mr. Avila told the detectives they could do anything with the safe and again denied knowledge or ownership of the safe. The detectives moved the safe into the living room. As Mr. Avila walked by Detective Green in the living room, Mr. Avila looked at Detective Green and stated, "You know who that safe belongs to."
 
 
 13
 The detectives transported the safe to the Wichita Police Department and, without obtaining a warrant, forced the safe open. Inside the safe, they found the following: (1) a glass jar containing foil packets of approximately seven ounces of heroin; (2) a brown plastic bag containing sandwich baggies holding eight ounces of cocaine; (3) $7,8000; (4) a plastic bag containing approximately one pound of marijuana; and (5) envelopes with Defendant's name on them. The items found inside the safe were submitted for fingerprint analysis. The laboratory found Mr. Avila's fingerprints on two of the baggies found in the safe.
 
 II. Analysis
 A. Suppression of Statements
 
 14
 On October 27, 1994, Mr. Avila moved to suppress all of the incriminating items found during the search. After holding hearings on December 3 and 21, 1993, and January 3, 1994, on January 19, 1994, the district court denied Mr. Avila's motion to suppress the evidence found during the search. Specifically, the district court found Mr. Avila lacked standing to challenge the seizure and search of the safe because he had "affirmatively disclaimed any interest in the safe" and "his actions constituted abandonment."
 
 
 15
 On April 26, 1994, Mr. Avila filed a second motion to suppress the contents of the safe, arguing that the district court's finding of abandonment in its previous order was impermissibly based on statements obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district court found that the statements made by Mr. Avila in response to the detectives questions regarding ownership of the safe were made in violation of Miranda and suppressed them. However, the district court found that Mr. Avila's statement to Detective Green disclaiming ownership of the safe, "You know who that safe belongs to," was not made in response to police interrogation but was spontaneous, voluntary, and thus not barred by the Fifth Amendment. Based on this finding, the district court denied Mr. Avila's motion to suppress and upheld his previous ruling that Mr. Avila abandoned any interest he had in the safe and thus lacked standing to challenge the search.
 
 
 16
 "In an appeal of the denial of a defendant's motion to suppress evidence, our standard of review is to accept the trial court's findings of fact, unless clearly erroneous, and to consider the evidence in the light most favorable to the Government." United States v. McAlpine, 919 F.2d 1461, 1463 (10th Cir.1990).
 
 
 17
 Mr. Avila argues the district court erred in finding his statement, "You know who that safe belongs to," voluntary and not barred by the Fifth Amendment. Mr. Avila cites Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), for the proposition that "voluntary, unwarned statements are inadmissible." In Elstad, however, the Supreme Court was concerned with unwarned statements made in response to police interrogation. In this case, the district court found that Mr. Avila's statement was not made in response to any police interrogation but was spontaneously provided by him.
 
 
 18
 "Volunteered statements of any kind are not barred by the Fifth Amendment." Miranda, 384 U.S. at 478, 86 S.Ct. at 1630. "Voluntary" within the meaning of the Fifth Amendment refers to noncoerced answers to police interrogation and not to voluntary and spontaneous statements. "If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible." United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir.1993).
 
 
 19
 Detective Green testified Mr. Avila volunteered the statement "You know who that safe belongs to," as Mr. Avila walked by him in the living room. Rec. vol. III, at 113. Based on our independent review of the entire record, we agree with the district court that Mr. Avila's statement was volunteered and was not the result of police interrogation. We therefore affirm the district court's denial of Mr. Avila's motion to suppress this statement about the safe.
 
 B. Abandonment
 
 20
 Relying on Mr. Avila's statement, "You know who that safe belongs to," the district court found Mr. Avila had abandoned any interest he had in the safe and thus lacked standing to challenge the warrantless search of the safe.
 
 
 21
 A warrantless search and seizure of abandoned property is not unreasonable under the Fourth Amendment. United States v. Trimble, 986 F.2d 394, 399 (10th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 2943, 124 L.Ed.2d 691 (1993). We review the district court's determination of abandonment for clear error. Id. at 399.
 
 
 22
 In United States v. Hernandez, 7 F.3d 944, 947 (10th Cir.1993) we observed:
 
 
 23
 The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. This determination is made by objective standards. An expectation of privacy is a question of intent which may be inferred from words, acts, and other objective facts. The abandonment must be voluntary. For example, an abandonment is not voluntary when it results in a Fourth Amendment violation. However, police pursuit or investigation at the time of abandonment of property, without more, does not of itself render abandonment involuntary. (internal citations omitted).
 
 
 24
 We conclude that the district court's determination that Mr. Avila abandoned his property was not clearly erroneous. Mr. Avila, by his actions and words, elected to distance himself from the safe. Thus, we affirm the district court's determination that Mr. Avila lacked standing to complain of a Fourth Amendment violation because he voluntarily abandoned the safe. Accordingly, we affirm the district court's denial of Mr. Avila's motion to suppress.
 
 
 25
 AFFIRMED.
 
 
 
 *
 Honorable Howard C. Bratton, Senior District Judge of the United States District Court for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3