**UNITED STATES of America, Plaintiff,**

v.

**Kevin Anthony JONES, Defendants.**

**Criminal Action No. 95–CR–451B.**

United States District Court,
D. Colorado.

Feb. 1, 1996.

Alvin LaCabe, Assistant U.S. Attorney, Denver, CO, for Plaintiff.

Robert Berger, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant, Kevin Anthony Jones, moves to suppress evidence obtained from the warrantless search of a grey, carry-on bag, statements allegedly obtained in violation of his Fourth and Fifth Amendment rights, and items taken from his person after arrest. This case presents a narrow but significant variation of the facts presented in the recent case of *United States v. Brumfield,* 910 F.Supp. 1528 (D.Colo.1996). As in *Brumfield,* defendant was arrested at the Greyhound Bus station in Denver, Colorado after drug enforcement agents and Denver police officers conducted a drug interdiction operation on the bus he was traveling on from Los Angeles, California. Jones contends that the drug interdiction operation constituted an unreasonable seizure under the Fourth Amendment. The facts of this case, however, juxtaposed against those in *Brumfield,* show that under the totality of the circumstances there was no violation of Jones' Fourth Amendment rights. Accordingly, for the reasons set forth in this order, I deny the motion to suppress.

### I.

On November 8, 1995, Jones was traveling on a Greyhound bus which originated in Los Angeles, California. The bus arrived at the Denver Greyhound terminal at approximately 10:40 p.m. for a scheduled lay-over for those passengers continuing to Chicago. When the Los Angeles bus arrives in Denver it is either taken off-site, serviced, cleaned and returned to the terminal for travel to Chicago or replaced with another bus. Either way, all passengers are required to deboard in Denver with their carry-on luggage and all checked luggage is removed from the belly of the bus.

Contrary to the hearing in *Brumfield,* at the suppression hearing here, the government presented reports about the success rate of drug interdiction operations conducted on the buses arriving in Denver from Los Angeles. In 1995 the officers seized from these buses approximately 1400 pounds of marijuana, 90 pounds of cocaine, 16 pounds of crack cocaine, 5 pounds of methamphetamine and various other drugs and currency. Thus, the officers possessed a generalized reasonable suspicion that someone on the bus may be transporting drugs.

Upon arrival in Denver, a D.E.A. agent and two Denver police officers (the officers) met the bus. The officers were dressed in plain clothes with badges displayed on a

chain worn around their necks. Although each of the officers carried a weapon, the weapon was not visible. DEA Agent Phillip Hart positioned himself outside of the bus approximately midway between the driver and the back of the bus. Before any of the passengers exited the bus, Detective Donald Brannan boarded the bus, while Detective Dave Kechter and a narcotics canine waited outside the bus approximately six feet from the door. Their presence was passive. From the front of the bus, Detective Brannan, using the bus public address system, made the following announcement: "May I have your attention. I am Detective Brannan from the Denver Police Narcotics and DEA. We are conducting a narcotics investigation. Outside the door you will see a plain clothes detective with a dog. It is a narcotics detection dog. It will not harm you, it's only trained in the detection of narcotics. Please do not attempt to pet the dog or push your carry-on luggage into the face of the dog. Just exit the bus in a normal fashion with your carry-on. Cargo which is contained in the lower portion of the bus may be claimed inside the terminal at the baggage counter. If you are going on to another location, your cargo will be automatically transferred by the Greyhound handlers. Are there any questions?"

Before Detective Brannan began making his announcement, Agent Hart noticed a man, later determined to be the defendant, pull down a grey, carry-on bag from the overhead compartment. During the course of the announcement, Agent Hart observed Jones attempt to push the bag back into the compartment. Agent Hart described Jones' actions as "panicked." Unsuccessful in his efforts, Jones placed the bag in an empty bus seat. He then grabbed the bag belonging to his traveling companion, Michelle Fuston. Fuston asked him what he was going to do with the bag he had placed in the vacant seat and he responded not to worry. Fuston and Jones then exited the bus along with the other passengers.

Upon entering the terminal, Jones and Fuston walked directly to the front of the terminal to the taxi-cab area. Fuston testified that after leaving the bus, Jones did not mention the bag or indicate any intention to reclaim it. Outside the terminal, Jones hailed a cab. However, before they could enter the cab Agent Hart approached them, identified himself, and asked if he could speak with them. Both agreed. Agent Hart asked Jones if he had been on the bus from Los Angeles to which he admitted that he had. He then requested Jones' bus ticket. Jones stated that the bus driver took his ticket because Denver was his final destination. Agent Hart then requested identification which Jones could not produce. Agent Hart next asked Fuston for her ticket and identification. She stated that Jones had her ticket. She then took the bag Jones was carrying and from it produced identification bearing the name Michelle Fuston. In response to questions regarding his current circumstances, Jones stated that he had. moved recently to Denver and had been in Los Angeles for four or five days. He explained that he had left his luggage at Fuston's home. Agent Hart then asked Fuston if he could look through her bag. She readily consented. The bag contained various female clothing and cosmetics but no male items or illegal substances.

While Agent Hart was talking with Fuston and Jones, Detective Brannan made a search through the empty bus. He found two bags: a garment bag which was ripped on one side and a grey, tweed, carry-on bag. He removed the bags from the bus and gave them to Detective Jerry Snow who had just arrived at the bus terminal. Detective Brannan then went to the front of the terminal to assist Agent Hart.

Upon Detective Brannan's arrival at the front of the terminal, Agent Hart asked Detective Brannan to speak with Jones while he spoke with Fuston. Jones gave Detective Brannan his name, date of birth, and address. He also claimed that Fuston was his girlfriend. In the meantime, Agent Hart questioned Fuston about the grey bag. She told him that the bag was not hers. On further inquiry, she stated that it was Jones' bag. At that point Detective Snow radioed Agent Hart and asked him to describe the bag which he had observed Jones leave on the bus. Detective Snow indicated that the

bag described by Agent Hart matched the description of a bag taken off the bus. Agent Hart then asked Fuston and Jones to accompany him to the baggage area of the terminal. Both consented to go with him.

During this period of time, Detective Snow had taken the bags found on the bus by Detective Brannan to the baggage area. Because the garment bag was ripped he could see the contents of the bag without opening it. Furthermore, the outside of the bag bore an identification tag. Detective Snow then examined the outside of the grey bag but found no identification tag. Consequently, he opened the bag to determine its owner and contents. The bag contained diapers wrapped in tape, a shirt, a cigarette lighter, a pack of Camel cigarettes and a key. Inside the taped package of diapers was approximately one kilogram of a substance later determined to be crack cocaine base.

When Agent Hart, Fuston and Jones entered the baggage area they could see the grey bag on a table approximately fifteen feet from the doorway. Agent Hart asked Jones if the bag was his. Jones denied ownership. Agent Hart then asked Fuston if Jones had been in possession of the bag. Fuston replied that the he had gotten on the bus in Los Angeles with the bag and had left the bag on the bus when they got to Denver. At that point, Agent Hart placed Jones under arrest, hand-cuffed him, and read him his *Miranda* rights. He was then taken to the Denver Police Department and booked.

At the suppression hearing, Fuston testified that she was not intimidated by or afraid of Detective Brannan or the narcotics canine nor, in her opinion, were the other passengers intimidated. She also testified that Detective Brannan's announcement did not alter her course of conduct in any way. Regarding the encounter with Agent Hart, Fuston stated that she was not coerced or threatened. She cooperated with the officers voluntarily, as did Jones.

## II.

■ The government contends that Jones does not have standing to challenge the warrantless search of the grey carry-on bag because he has never claimed ownership of the bag and he abandoned the bag when he left the bus. Jones, in contrast, asserts that he has standing because the officers saw him with the bag and Fuston stated that it was his. He argues that the drug interdiction operation constituted an effective "takeover" of the bus by the officers which constituted an unreasonable seizure of his person under the Fourth Amendment. According to Jones, because any alleged abandonment was the result of the illegal seizure, it was not voluntary and, thus, any evidence obtained from the search must be suppressed.

■ Property is abandoned when the individual has not retained any reasonable expectation of privacy in the object. *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993). However, "An abandonment must be voluntary, and an abandonment that results from a Fourth Amendment violation cannot be voluntary." *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir.1995). As in *Brumfield*, the starting point of the analysis is whether the drug interdiction operation, as conducted here, constituted a seizure under the Fourth Amendment.

■ Fourth Amendment jurisprudence teaches that not all encounters between police officers and citizens constitute a seizure. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Terry v. Ohio*, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968). As in *Brumfield*, the relevant inquiry is whether, under the totality of the circumstances, a reasonable person in Jones' position would have felt free to decline the officers' requests or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388–89, 115 L.Ed.2d 389 (1991).

When Detective Brannan boarded the bus, the only other apparent official presence was Detective Kechter and his dog. Detective Kechter and the dog stood passively approximately six feet from the door and did not alter or impede the passengers' exit. Contrary to the announcement made by Agent

Hart in *Brumfield,* the tenor and tone of Detective Brannan's announcement was informative rather than confrontational and coercive. Detective Brannan explained his presence on the bus, and the fact that the dog outside the bus was a trained narcotics dog which would not harm them. He then told the passengers to exit the bus in a normal fashion with their carry-on luggage. In contrast to Agent Hart's announcement in *Brumfield,* Detective Brannan did not control the manner in which the passengers left the bus. Furthermore, Fuston's testimony is probative of a reasonable person's frame of mind. She testified that she was not afraid of the officers or the dog nor, in her opinion, were the other passengers intimidated. Fuston further testified that the announcement made by Detective Brannan had no effect on her departure from the bus.

The Supreme Court's holding in *INS v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), is instructive here. There, INS agents conducted factory surveys to determine whether employees were legally in the country. Several agents were posted at the exits while other agents dispersed through the factory to question employees at their workstations. Each employee was then asked a few questions regarding citizenship. If employees attempted to leave the factory they were questioned by officers at the exits. The employees argued that the method and manner of the survey violated the Fourth Amendment because the employees could not leave their workstations and the agents controlled the means of departure. Hence, they were not free to leave. The Supreme Court, however, disagreed concluding that the encounter was consensual because the employees were not free to leave for reasons independent of the officer's conduct. Furthermore, if questioning did not constitute a seizure within the factory, it did not constitute a seizure merely because it occurred at the exits.

In this case, factors unrelated to the drug interdiction operation required the passengers to deboard the bus. In contrast to *Brumfield,* the passengers here were not commanded to exit in a particular manner. Moreover, as in *INS v. Delgado,* none of the officers or agents impeded the passengers movement. Although the officers' behavior may be characterized as taking advantage of a fortuitous situation in which the passengers choices were substantially limited by traveling on a bus, such conduct does not alone violate the Fourth Amendment. *See Florida v. Bostick,* 501 U.S. at 436, 111 S.Ct. at 2387. Here, Detective Brannan did not request the passengers to do anything they were not already required to do to leave the bus. Detective Brannan's presence was not threatening and his conduct did not convey a message that compliance was required. The encounter remained consensual as contrasted with the confrontational and coercive encounter in *Brumfield.* Therefore, I conclude under the totality of the circumstances of this case that this drug interdiction operation, as conducted, did not implicate Jones' Fourth Amendment rights.

▮ Having concluded that the drug interdiction operation did not constitute a Fourth Amendment seizure, the issue remains whether Jones' abandonment of his bag was voluntary. Jones testified at the hearing that he left the bag on the bus because he was afraid that the dog would alert to the substances in it. Therefore, he intentionally left the bag behind. Jones left the terminal in a manner that indicated he had no intention to later reclaim the bag. He denied it was his when asked about it in the baggage area. Moreover, Fuston testified that Jones exhibited no desire to return to the bus to retrieve the bag. Although Jones may have maintained a subjective expectation of privacy in the bag, it must be an expectation that society is prepared to recognize as objectively reasonable. *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir.1983). I find and conclude that society does not recognize an expectation of privacy in a piece of luggage purposely left behind in order to avoid legal consequences. *Jones,* 707 F. at 1172–73. Jones, thus, voluntarily abandoned the bag. Accordingly, any warrantless search of the bag did not violate his Fourth Amendment rights.

▮ Jones next argues that he was effectively in custody from the time Agent Hart contacted him outside the terminal until

426

he was arrested. He asserts that all statements made by him during this time must be suppressed because he was not advised of his right to remain silent. Jones was not placed under arrest until Fuston identified the bag as belonging to him and the bag was found to contain narcotics. Prior to his arrest, Jones cooperated voluntarily with Agent Hart and Detective Brannan. There is no requirement that a defendant be advised of his rights during a consensual encounter. The sequence of events here presents the now classic paradigm of a consensual police-citizen encounter which escalates to one where the officer possesses the requisite *Terry* articuable suspicion justifying an intermediate level of Fourth Amendment intrusion, reasonable in scope and time, which in turn yields probable cause to arrest.

Any pre-arrest statements made by Jones were, under the totality of the circumstances voluntary and not the result of a custodial interrogation. Those made after his arrest were voluntary after full *Miranda* advisement. Consequently, the motion to suppress statements is denied.

Jones' final argument that evidence obtained from a search of his person after arrest must be suppressed is likewise unfounded. The evidence supports a finding that probable cause existed at the time of his arrest. *United States v. Chavez,* 812 F.2d 1295, 1301 (10th Cir.1987). Therefore, the search incident to arrest was lawful. *United States v. Rabinowitz,* 339 U.S. 56, 60, 70 S.Ct. 430, 432–33, 94 L.Ed. 653 (1950). Accordingly, the motion to suppress items seized from Jones' person is denied.

Accordingly it is ORDERED that:

1) Defendant's motion to suppress evidence from the grey bag and search incident to arrest is DENIED.

2) Defendant's motion to suppress statements made before arrest is DENIED.