**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 27 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

KEVIN ANTHONY JONES,

    Defendant-Appellant.

No. 96-1247
(D.C. No. 95-CR-451-B)
(Dist. of Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **KELLY**, and **LUCERO**, Circuit Judges.

---

Defendant-Appellant Kevin Anthony Jones pled guilty to possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) (1994 & Supp. 1997), but reserved the right to appeal the denial of his suppression motion on the issue of whether the cocaine was discovered pursuant to an illegal seizure. Jones was apprehended in a Denver bus terminal after police found cocaine in a bag that he had left behind on a bus. Jones claims

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

he left the bag only after local police and DEA agents unlawfully seized the bus. Reading all inferences in favor of the government, as we must on reviewing a denial of a motion to suppress, United States v. Austin, 66 F.3d 1115, 1118 (10th Cir. 1995), cert. denied, 116 S. Ct. 799 (1996), we find the bus was not unlawfully seized. Thus we affirm.

Background

On November 8, 1995, Jones was a passenger on a Greyhound bus traveling from Los Angeles to Chicago, with a stopover in Denver. Jones was traveling with another passenger, Michelle Fuston, and his final destination was Denver. Shortly before the L.A./Chicago bus arrives in Denver, passengers are routinely informed by the driver that all passengers, including those continuing on to Chicago, must exit the bus in Denver. The bus is emptied so that it can be serviced or replaced for the completion of the trip.

When the bus arrived in Denver, it was met by three members of a drug task force known as the "Transportation Unit": Detective Donald Brannan of the Denver Police; Agent Philip Hart of the DEA; and Detective David Kechter, a canine handler with the Denver Police who had with him a narcotics detection dog, Sintha.

Agent Hart positioned himself outside of the bus, midway between the driver and the back of the bus. Detective Kechter and Sintha also were positioned

outside the bus, approximately six feet from the bus door. Detective Brannan boarded the bus and made the following announcement over the public address system:

> May I have your attention. I am Detective Brannan from the Denver police narcotics and the DEA. We are conducting a narcotics investigation. Outside the door you will see a plain clothes detective with a dog. It is a narcotics detection dog. It will not harm you. It's only trained in the detection of narcotics. Please do not attempt to pet the dog or push your carry-on luggage into the face of the dog. Just exit the bus in a normal fashion with your carry-on. Cargo which is contained in the lower portion of the bus may be claimed inside the terminal at the baggage counter. If you are going on to another location, your cargo will be automatically transferred by the Greyhound handlers. Are there any questions?

Agent Hart's role in the operation was to observe passengers' reactions. Before Detective Brannan began making his announcement, Hart saw a man, later determined to be Jones, pull down a grey, carry-on bag from the overhead compartment. During the announcement, Hart saw Jones try to push the bag back into the compartment. Hart described Jones as "almost in a panic" while trying to shove the bag back into the overhead. Unable to push the bag back into the compartment, Jones placed it on a seat. He then disembarked from the bus, carrying Fuston's travel bag, but leaving his own bag behind on the bus.

Hart followed Jones and Fuston as they left the bus terminal and attempted to hail a taxi. Before they could enter the cab, Hart approached them, identified himself, and asked if he could speak with them. Both agreed.

While Hart was talking with Fuston and Jones, Detective Brannan searched the empty bus. He found two bags: a garment bag and a grey, tweed, carry-on bag. He removed the bags from the bus and gave them to Detective Jerry Snow who had just arrived at the bus terminal. Brannan then joined Hart at the front of the terminal. When he questioned Fuston about the grey bag, she identified it as Jones' bag. Jones denied ownership of the bag. Upon searching the bag, the officers discovered approximately one kilogram of cocaine.

On appeal, Jones does not deny ownership of the bag, nor does he contest the district court's finding that he abandoned the bag. However, he does contest the lower court's finding that the abandonment was voluntary. According to Jones, the abandonment was the result of an illegal seizure of the bus. Thus, it was not voluntary, and any evidence obtained by searching the bag must be suppressed.

Analysis

In reviewing the denial of a motion to suppress, we review the evidence in the light most favorable to the government. United States v. Austin, 66 F.3d 1115, 1118 (10th Cir. 1995), cert. denied, 116 S. Ct. 799 (1996). We accept the district court's factual findings unless they are clearly erroneous. Id. However, we review de novo the ultimate determination of whether an unconstitutional search or seizure has occurred. Id.

- 4 -

[A] warrantless search and seizure of abandoned property is not unreasonable under the Fourth Amendment. It is not unreasonable because [w]hen individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had.

[However, a]n abandonment must be voluntary, and an abandonment that results from a Fourth Amendment violation cannot be voluntary.

Id. (internal citations omitted).

The only issue in this case is whether the police activity on the bus, before Jones abandoned his bag, constituted an unlawful seizure, such that his abandonment of his bag was involuntary. Not all encounters between police officers and citizens constitute a seizure. Florida v. Bostick, 501 U.S. 429, 434 (1991). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

The district court found that "the tenor and tone of Detective Brannan's announcement was informative rather than confrontational and coercive." United States v. Jones, 914 F. Supp. 421, 425 (D. Colo. 1996). The court also found that Greyhound, rather than the officers, required passengers to leave the bus in Denver. Id. at 422, 425. These findings are not clearly erroneous. Thus, it was Greyhound, and not the officers, that "restrained the liberty" of Jones and his fellow passengers.

In INS v. Delgado, 466 U.S. 210 (1984), the Supreme Court held that the Fourth Amendment was not violated when agents questioned factory workers concerning their citizenship status. Although the employees may not have felt "free to leave" the factory, their movements were restrained by their employer rather than by officers. Id. at 218. Thus, the Court concluded that the encounter was not an unlawful seizure. Id. at 221. Similarly in Florida v. Bostick, 501 U.S. 429 (1991), the Court held that although passengers may not have felt "free to leave" a bus that was about to depart, police did not necessarily seize the passengers by questioning them because the passengers would not have felt "free to leave" even in the absence of the officers. If the police activity itself was not coercive the encounter would not constitute an unlawful seizure. 501 U.S. at 437. In the case at bar, the travelers were required to leave the bus for reasons independent of the agents' conduct, which was found by the district court not to be coercive.

Jones argues that the district court's finding that "all passengers are required to deboard in Denver with their carry-on luggage," 914 F. Supp. at 422, was clearly erroneous. He argues that this led to the court's erroneous conclusion that "Detective Brannan did not control the manner in which the passengers left the bus." Id. at 425. The testimony of the officers at the suppression hearing supports the conclusion that passengers were told that if Denver was their final

- 6 -

destination, as was the case with Jones, they must depart and take all of their belongings with them. The only passengers allowed by the bus company to leave their personal belongings inside the passenger compartment during the layover were those who were continuing past Denver on the same bus. Even then, passengers were told it was inadvisable to leave their belongings on the bus during the layover because the safety of the belongings could not be assured. Thus, the district court's finding of fact, insofar as it applied to Jones, was supported by the record.

In any event, the district court also concluded that the officers' conduct was not coercive. 914 F. Supp. at 425 ("Detective Brannan's presence was not threatening and his conduct did not convey a message that compliance was required. The encounter remained consensual. . . .") Brannan's announcement: "Please do not attempt to pet the dog or push your carry on luggage into the face of the dog. Just exit the bus in a normal fashion with your carry-on," is susceptible of the meaning Jones would like to attribute to it--that the officers required passengers to take their luggage off the bus. However, it is equally susceptible of another meaning--that the officers informed passengers who intended to carry their luggage off that they could carry their luggage in a normal fashion.

That a second passenger left luggage on the bus further supports the district court's findings that passengers were not ordered to remove their luggage, as does officer Brannan's testimony that he did not so order passengers. Jones himself did not take his bag. While he argues that Brannan's order frightened him into leaving his bag because he feared the narcotics would be detected, it is well-established that the whether an individual would feel free to disregard a police order is measured by the reaction of a reasonable <u>innocent</u> person to the officer's conduct. <u>See Bostick</u>, 501 U.S. at 437-38. Thus any coercion that Jones experienced as a result of his knowledge that he was transporting drugs is not a factor in our Fourth Amendment analysis.

We hold that the officers' conduct on the bus did not constitute an unlawful seizure. We therefore AFFIRM the district court's denial of the motion to suppress.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

96-1247, <u>United States v. Jones</u>

**LUCERO, Circuit Judge, dissenting**

I dissent.