**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Timothy Dwayne AUSTIN,**
**Defendant–Appellant.**

**No. 94–2161.**

United States Court of Appeals,
Tenth Circuit.

Sept. 14, 1995.

Rehearing Denied Oct. 17, 1995.

---

Thomas B. Jameson, Assistant Federal Public Defender, Albuquerque, NM, for appellant.

Fred J. Federici, Assistant United States Attorney, Las Cruces, NM, for appellee.

John J. Kelly, United States Attorney for the District of New Mexico, and James D. Tierney, Supervisory Assistant United States Attorney, Albuquerque, NM, on the brief, for appellee.

Before TACHA, SETH, and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

A federal grand jury indicted defendant Timothy Dwayne Austin on September 9, 1993, charging him with possession of drugs with intent to distribute in violation of 21

U.S.C. § 841(a)(1) and (b)(1)(B). Defendant moved to suppress the physical evidence obtained by the police. After the district court denied defendant's motion, he entered a conditional guilty plea reserving his right to appeal the denial of his motion to suppress. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## Background

On the evening of June 26, 1993, Daniel Hollis sat at an unoccupied gate in the Albuquerque International Airport during a layover between flights. Defendant approached Hollis and asked him how long he would be sitting there, to which Hollis replied, "a few minutes." Defendant then asked Hollis if Hollis would watch his bag, and Hollis agreed.

As soon as defendant walked away, Hollis regretted agreeing to watch a stranger's bag. He recalled reading about various terrorism prevention measures, one of which advised travelers not to look after luggage belonging to strangers. Hollis moved to a seat approximately forty feet away from the bag, but he continued to feel nervous. He therefore called airport security.

Within minutes of receiving Hollis's call, airport police officer Dwayne Hoppe arrived at the gate. Hoppe picked up the bag, which had no exterior name tag, and unzipped it. He examined the contents of the bag, closed it, and then left with the bag. Hoppe told Hollis he was taking the bag to the airport's lost and found area.

Approximately fifteen minutes after leaving the bag with Hollis, defendant returned to retrieve it. Hollis told defendant that he had become uncomfortable with watching the bag and had called airport security. After Hollis told defendant that the security officer had taken the bag to the lost and found area, defendant left.

After Hoppe left Hollis, he took the bag to be X-rayed. The X-ray revealed no suspicious items. Hoppe then returned to the airport police office, where lost and found

property is stored. Airport police sergeant Felix Sanchez directed Hoppe to inventory the bag's contents while another officer observed. While inventorying the bag, the officers discovered two plastic bottles labeled "boric acid." According to Sanchez's testimony at the suppression hearing, he was concerned about these bottles because he thought boric acid is flammable and can be employed as a component in explosive devices.[1] Setting the bottles aside, the officers completed their search of the bag but found nothing else of concern.

The officers then opened the bottles. Instead of boric acid, the bottles contained small plastic-wrapped packets. By field-testing the substance in one of the packets, the officers discovered that the packets contained heroin. The officers replaced the packets into the bottles and contacted federal authorities. They left defendant's bag on the counter of the lost and found area.

Sometime later, defendant arrived at the police office. Although his bag was on the counter in plain view, defendant did not ask about it or attempt to claim it. Instead, defendant asked Sanchez for information concerning outbound flights and left the office.

The district court held a hearing on defendant's motion to suppress evidence on February 25, 1994. After hearing the witnesses' testimony, the court found that defendant had abandoned the bag at the lost and found area in the police office. The court based this conclusion on its factual finding that defendant spent approximately fifteen minutes in the police office without mentioning the bag or expressing any possessory interest in it. Because the court found that defendant abandoned the bag, it held that defendant had no expectation of privacy in the bag or its contents. In addition, the court found that the airport police "acted consistent with the FAA policy in handling lost and found articles." Consequently, the district

---

1. When defendant filed a motion to reconsider the denial of his motion to suppress, he provided an affidavit from a University of New Mexico professor of chemistry. In the affidavit, the professor contradicted Sanchez's testimony regarding the dangerous properties of boric acid. Our decision rests on grounds that do not require us to consider the effect of this affidavit.

court denied defendant's motion to suppress the evidence found in his bag.

## Discussion

### I.

■ When reviewing a district court's denial of a motion to suppress, we accept the district court's findings of fact unless they are clearly erroneous. *United States v. Bute*, 43 F.3d 531, 534 (10th Cir.1994). We consider the evidence in the record in the light most favorable to the government, as it was the prevailing party in the district court. *See United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir.1990). If the district court did not make necessary findings, we nonetheless uphold the court's denial of a motion to suppress "if there is any reasonable view of the evidence to support it." *United States v. Neu*, 879 F.2d 805, 807 (10th Cir.1989). A trial court's determination of abandonment of property is a factual finding, which we therefore examine for clear error. *See United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir.1993). In contrast to our review of the district court's factual findings, "[t]he ultimate question of whether a search is reasonable under the Fourth Amendment is a question of law which we review de novo." *Bute*, 43 F.3d at 534.

### II.

■ "The Fourth Amendment 'protects people from unreasonable government intrusions into their legitimate expectations of privacy.' " *United States v. Place*, 462 U.S. 696, 706–07, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (quoting *United States v. Chadwick*, 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977), *overruled in part, California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)). But "[a] warrantless search and seizure of abandoned property is not unreasonable under the Fourth Amendment." *Hernandez*, 7 F.3d at 947; *see also Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). It is not unreasonable because "[w]hen individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983).

■ An abandonment must be voluntary, and an abandonment that results from a Fourth Amendment violation cannot be voluntary. *Hernandez*, 7 F.3d at 947. Consequently, even if the district court correctly concluded that defendant abandoned the bag at the security office, we must determine whether that abandonment was the result of an earlier Fourth Amendment violation. Thus, the district court should have examined the legality of the search from the time of Hoppe's first encounter with Hollis.

■ "The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object." *Jones*, 707 F.2d at 1172. "An expectation of privacy is a question of intent which may be inferred from words, acts, and other objective facts." *Hernandez*, 7 F.3d at 947. When defendant left his bag in Hollis's care, he asked Hollis to watch it for him. He clearly intended to return and retrieve the bag. *Cf. United States v. Morgan*, 936 F.2d 1561, 1570 (10th Cir.1991) (in concluding that the defendant abandoned a gym bag, the court noted that the defendant had not "left [the item] to the care or responsibility of another"), *cert. denied*, 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992). In fact, defendant did return to retrieve the bag approximately fifteen minutes after leaving it with Hollis. Based on these facts, we conclude that defendant intended to retain a privacy interest in the luggage.

■ But defendant must show more than his subjective intent. His expectation of privacy must be one "that society would recognize ... as *objectively* reasonable" for the search to have violated the Fourth Amendment. *United States v. Benitez–Arreguin*, 973 F.2d 823, 827 (10th Cir.1992) (emphasis added). "If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause." *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983); *see also United States v. McKennon*, 814 F.2d 1539, 1544 (11th Cir.

1987) ("Extenuating circumstances can erode the reasonableness of a privacy expectation to the extent that the interest is not constitutionally protected."). Defendant contends that when he entrusted his bag to a stranger in an airport he retained a legitimate expectation of privacy in that bag. We conclude that he did not.

▇▇ Defendant left his bag in the care of Hollis; thus, Hollis was in lawful possession of it. *See Benitez–Arreguin,* 973 F.2d at 827 (holding that a bailee in legal possession and control of a suitcase has a legitimate expectation of privacy in its contents). Hollis had control of the bag and the authority to exclude others' access to the bag. *Id.* at 828. Hollis also had the authority, however, to allow others access to the object in his lawful possession. By leaving his bag in the possession and control of Hollis, defendant assumed the risk that Hollis would allow the authorities access to the bag. *Cf. United States v. Jacobsen,* 466 U.S. 109, 117, 104 S.Ct. 1652, 1658–59, 80 L.Ed.2d 85 (1984) ("It is well settled that when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information."); *United States v. Mithun,* 933 F.2d 631, 634 n. 3 (8th Cir.) ("[The defendant] assumed the risk that hotel employees would discover the contraband and reveal that information to authorities."), *cert. denied,* 502 U.S. 869, 112 S.Ct. 201, 116 L.Ed.2d 161 (1991). Here, Hollis not only allowed governmental access to the bag but requested it. Although defendant did not intend for Hollis to turn over care of the bag to airport police, he voluntarily gave Hollis the ability to do so. Because "the precipitous nature of the transaction hardly supports a reasonable inference that [defendant] took normal precautions to maintain his privacy," *Rawlings v. Kentucky,* 448 U.S. 98, 105, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980), we conclude that defendant did

not have an objectively reasonable expectation of privacy in the bag.[2]

*Conclusion*

Because defendant did not have an objectively reasonable expectation of privacy, the search of his bag did not violate the Fourth Amendment. We therefore **AFFIRM** the district court's denial of defendant's motion to suppress evidence.

---

**2.** Defendant relies on *United States v. Most,* 876 F.2d 191 (D.C.Cir.1989), to support his contention that his expectation of privacy was reasonable. We disagree. In *Most,* the court held that the defendant retained a legitimate expectation of privacy in a bag he left with a store clerk,

where the store required all customers to surrender their packages as a condition of entry to the store. *Id.* at 199. Here, defendant voluntarily relinquished his bag without any conditions or agreements.