**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 1997**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CARLOS JULIO GARZON, a/k/a
CARLOS JULIIO GARZON-DAZA,

      Defendant-Appellant.

No. 96-1197

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 95-CR-315-Z)**

---

Virginia L. Grady, Assistant Federal Public Defender, Denver, Colorado (Michael
G. Katz, Federal Public Defender, Denver, Colorado, with her on the briefs), for
Defendant-Appellant.

James C. Murphy, Assistant United States Attorney, Denver, Colorado (Henry L.
Solano, United States Attorney, Denver, Colorado, with him on the brief), for
Plaintiff-Appellee.

---

Before **PORFILIO**, **EBEL**, and **HENRY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

During a warrantless search of Defendant-Appellant Carlos Julio Garzon's backpacks, which had been left in the overhead storage compartment of a Greyhound bus during a layover at the downtown Denver, Colorado bus terminal, law enforcement officers discovered approximately four kilograms of cocaine. Garzon was indicted for possession with intent to distribute cocaine, and the aiding and abetting thereof. Garzon moved to suppress the cocaine, claiming it was the product of an unconstitutional search of his backpacks. The United States opposed the motion, arguing that Garzon abandoned his backpacks when he left the backpacks on the bus during the layover despite a law enforcement officer's instructions to all passengers to leave the bus and to take all carry-on items with them past a trained narcotics detection dog. The district court ruled that Garzon had abandoned his backpacks when he left his backpacks on the bus, and accordingly denied Garzon's motion. The district court held that its ruling was controlled by our opinion in United States v. Hernandez, 7 F.3d 944 (10th Cir. 1993). Garzon then entered a conditional guilty plea pursuant to Fed. R. Crim. P. 11(a)(2), and now appeals. We have jurisdiction under 28 U.S.C. § 1291. We reverse.

## BACKGROUND

On August 22, 1995, Defendant-Appellant Carlos Julio Garzon was a passenger on Greyhound Lines Route 2192, traveling eastbound from Los

Angeles. The bus was scheduled to stop in Denver for a layover before traveling on to Chicago, where Garzon was to transfer to a Cleveland-bound bus. Before the bus arrived at the Denver terminal, the driver informed the passengers that ongoing passengers would be permitted to leave their carry-on luggage on the bus during the layover.

Route 2192 was at this time the subject of a drug interdiction effort coordinated by the Drug Enforcement Administration ("DEA") and Denver police. Accordingly, when the bus arrived in Denver at approximately 1:15 p.m, it was met by DEA agents Charlie Olachea and Vinnie Sanchez, along with Denver Police officers David Kechter and Jerry Snow and a trained narcotics detection dog, Sintha. Agent Olachea boarded the bus and, after welcoming the passengers to Denver, stated that Denver police were conducting drug interdiction activities at the terminal. Olachea informed the passengers that a trained narcotics detection dog was waiting outside the bus and said: "I would appreciate it if you would hold your carry-on luggage in your right hand as you walk past the narcotics-trained dog."[1] Olachea then told the passengers that all carry-on

---

[1] Olachea admitted that a dog sniff of moving luggage for drugs is "not real reliable." Hence, the real purpose of the order was not to submit the luggage to a dog sniff, but rather to observe how various passengers react when they are personally forced to comply with this order. So, this order should be viewed as directed against the passengers rather than just an attempt to make the luggage available for a dog sniff.

luggage would need to be removed so that the bus could be "cleared" before going on to Chicago. Several passengers inquired whether they were required to remove their baggage from the bus, and Olachea responded via the intercom that they were so required. All of the passengers then left the bus. As he left the bus, Garzon carried a blue backpack. Officer Kechter noted that Garzon held his bag high on his left side, away from the dog; this made Kechter suspicious, and he thus asked another officer to keep an eye on Garzon.

After all the passengers had cleared the bus, Olachea observed two backpacks that had been left together in the overhead luggage compartment near the middle of the bus. The backpacks had no identifying tags or labels. Olachea removed the bags from the bus and asked two passengers who remained near the bus whether the bags belonged to them. Although the two passengers disclaimed ownership, Olachea did not make any further attempt to identify who owned the bags. Instead, he gave the bags to Officer Kechter, who placed the bags on a cart along with the checked luggage, which the officers had removed from a compartment underneath the bus. Officer Kechter then took this cart to another section of the terminal to allow Sintha to examine the luggage for narcotics.

Sintha alerted on the tan backpack, biting and clawing at it in a sufficiently aggressive manner that it came open, spilling out its contents. Kechter then searched both backpacks, although he had not obtained a warrant to do so. In

each backpack he found two bricks of cocaine. The tan backpack also contained a t-shirt with a Florida logo on it, as well as a pair of Levi's blue jeans and a pair of shorts, both size 33. The black backpack contained a t-shirt with a Levi's logo on it.

While Kechter was searching the backpacks, Sanchez and Olachea looked for Garzon inside the terminal because of Garzon's suspicious behavior upon leaving the bus. Upon finding Garzon and his female traveling companion, the agents asked them for their tickets. Garzon produced a ticket in the name of "Jose Delgado," and explained that a friend had purchased the ticket for him. He then produced a Florida driver's license with his name on it. Garzon's companion produced a ticket in the name of "B. Bigoa," and a New Jersey driver's license in the name of "Beatrice Bigoa." Both tickets were one-way fares to Cleveland, Ohio that had been purchased in Los Angeles, with cash.

During this encounter, Sanchez and Olachea also conducted a consensual search of the blue backpack that Garzon had carried off the bus. This search did not uncover any contraband. The agents did not at this time ask Garzon whether he had left any baggage on the bus, nor did they ask Garzon any other questions. However, they did note that he was wearing a blue baseball cap with a Levi's logo on it.

After their encounter with Garzon and Bigoa, Agents Sanchez and Olachea rendezvoused with Officer Kechter, who informed them that he had found cocaine in the backpacks. Sanchez and Olachea then contacted Garzon and Bigoa once again. Olachea asked Garzon for permission to look at the shorts he was wearing to determine their size. Garzon agreed, and Olachea determined that the shorts were size 33. Garzon then consented to another search of his blue backpack. No contraband was discovered, although the agents noted that, in addition to the baseball cap previously discovered, the bag also contained a t-shirt bearing a Levi's logo. As before, Garzon was never asked if the two backpacks left on the bus belonged to him. During further questioning, the officers concluded that "things just didn't seem to add up." Garzon and Bigoa were then arrested. Bigoa was later released and no charges were filed against her.

The cocaine was taken to the Aurora Police Department laboratory, where it was determined that each brick weighed approximately one kilogram. Additionally, Garzon's fingerprints were found on the packaging material that had covered the cocaine. Based on this information, Garzon was indicted for possession with intent to distribute cocaine.

Prior to trial, Garzon filed a motion to suppress the cocaine, claiming the warrantless search of his backpacks left on the bus was impermissible under the Fourth Amendment. At the suppression hearing, the district court heard testimony

from Agents Olachea and Kechter, as well as from two Greyhound employees who testified that Greyhound passengers are normally permitted to leave their baggage on the bus during stopovers, and are specifically told that before the bus arrives at the terminal. The district court denied the suppression motion from the bench, agreeing with the government that Garzon had abandoned the backpacks when he left them on the bus in violation of Officer Olachea's instruction to remove all carry-on luggage, and thus had no reasonable expectation of privacy in them under the Fourth Amendment. Garzon then pled guilty, reserving his right to appeal the suppression issue pursuant to Fed. R. Crim. P. 11(a)(2).

## DISCUSSION

"The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object." United States v. Jones, 707 F.2d 1169, 1172 (10th Cir. 1983); United States v. Hernandez, 7 F.3d at 947. Abandonment is akin to the issue of standing because a defendant lacks standing to complain of an illegal search or seizure of property which has been abandoned. Id.

This test of abandonment subsumes both a subjective and an objective component. United States v. Austin, 66 F.3d 1115, 1118-19 (10th Cir. 1995), cert. denied. 116 S. Ct. 799 (1996). Findings of subjective intent are findings of

fact, which we review only under a clearly erroneous standard. However, a determination of whether the defendant retained an objectively reasonable expectation of privacy in the property that society will recognize is a question of law that we review *de novo*. United States v. Austin, 66 F.3d at 1118-19; United States v. Benitez-Arreguin, 973 F.2d 823, 827 (10th Cir. 1992) ("[W]e review *de novo* a district court's ultimate objective determination whether society would recognize a defendant's subjective expectation of privacy."); United States v. Marchant, 55 F.3d 509, 512 (10th Cir.), cert. denied, 116 S. Ct. 260 (1995). In this case, the district court made a factual finding that Garzon subjectively did not intend to abandon those backpacks. The court found,

> I am sure that in fact Mr. Garzon, if these were his bags, would not - did not consider these abandoned just as Mr. Hernandez in United States v. Hernandez may not have considered his bags to be abandoned. (Tr. at 182-83).

That factual finding is reviewed under a clearly erroneous standard, and we do not find it to be clearly erroneous. Thus, we accept the finding that Garzon retained a subjective expectation of privacy in the two backpacks left on the bus.

We turn then to the objective reasonableness component of abandonment. That is the component relied upon by the court in concluding there was abandonment here. The court ruled that even though the defendant did not intend to abandon the backpacks, his subjective expectation of privacy and ownership in those backpacks was not objectively reasonable because a law enforcement officer

had told the passengers on the bus that they had to remove all of their carry-on luggage. The court's ruling, in that regard is as follows:

> [T]here is no reasonable expectation of privacy if someone ignores that announcement [the announcement by the police that all handbags must be removed so that they can be subjected to a dog sniff for drugs] and leaves their bag on the bus. (Tr. at 184-85).

As noted above, we review that holding *de novo*, and it is here that we must disagree with the district court.

We begin by emphasizing that the government did not argue, and the court did not find, that Olachea's order for all passengers to disembark the bus with all their personal belongings and to proceed past a drug-sniffing dog was a lawful order. Olachea had neither a search warrant nor an arrest warrant to authorize his actions. Furthermore, there is absolutely nothing in this record to suggest that Olachea had probable cause or even any articulable suspicion that Garzon or any other passenger on the bus was carrying drugs at the time the order was given. The layover in Denver cannot be justified as a border stop because it occurred nearly a thousand miles from an international border. It cannot be justified as an established checkpoint stop because this stop singled out just bus #2192 and the passengers on board that bus. It cannot be justified on the basis of safety concerns, as are airport examinations, because this order was directed at passengers on a bus who were neither driving nor in a position to endanger their fellow passengers if they were carrying drugs. Further, Olachea's order was

directly contrary to the advice previously given to the passengers by the bus driver that they could leave their personal belongings on board the bus during the brief layover in Denver before the bus continued on to Chicago. Thus, the order given by Olachea was, pure and simple, an unlawful order. No one has contended otherwise, and on this record we have no doubt that it should be so characterized. The order to Garzon to remove his personal belongings and the subsequent warrantless search of his backpacks was in violation of Garzon's Fourth Amendment rights and the fruits of the search must be suppressed unless Garzon abandoned his backpacks.

Second, we emphasize that Garzon did nothing to manifest objectively an intent to abandon his backpacks that were left on the bus. Garzon never once denied ownership of those backpacks. Indeed, he did not even stand silent when asked if anyone claimed them because no such inquiry was ever directed at Garzon or, so far as this record shows, was any such inquiry ever uttered within Garzon's hearing. Further, he never objectively evidenced an abandonment intent by clear and unequivocal physical acts, such as throwing them away, giving them to strangers, leaving them unguarded on public property or the like. To the contrary, he left them in a secure overhead internal luggage rack just as he was told he could by the bus driver. He was going to reboard that same bus after a brief layover in Denver to continue his journey to Chicago, and he stayed in the

bus terminal during the layover, which manifested his intent to reboard the bus and to resume possession of his backpacks. Indeed, nothing in this record suggests that he did not have continued access to the bus during the layover in case he needed to get something out of his backpacks.

The only act relied upon by the district court to find an objective abandonment was Garzon's failure to obey Olachea's unlawful order to remove his personal belongings from the bus and to parade them past a drug-sniffing dog. So, the question presented in this case is a stark one: Is it so unreasonable to disregard an officer's unlawful order to remove personal belongings from a place where they are entitled to be kept for the purpose of facilitating a drug search that the act of refusal constitutes an objective abandonment of the property in question? That is the question the district court answered in the affirmative, and which we now answer in the negative.[2]

---

[2] There is no doubt that Olachea's request to remove all luggage and to parade it past the dog was an order. Indeed, when the mandatory nature of the request was challenged by several of the passengers, Olachea was very clear that they must remove all of their luggage. The district court found that this was a mandatory order, and we do not find that conclusion to be clearly erroneous. If, on the other hand, the statement by Olachea were deemed to be merely precatory, Garzon's position would be even stronger. In that case, the government would be relying on a consensual encounter, and Garzon's refusal to take his backpacks off the bus as requested made it clear that he did not consent to such an encounter. One certainly could not draw an objective inference of abandonment from a person's failure to follow a precatory request.

In Florida v. Royer, 460 U.S. 491 (1982), the United States Supreme Court addressed a situation where a defendant was requested to take his luggage from an airport concourse to an examination room approximately 40 feet away for the purposes of a drug inspection. In that case, unlike here, the officers had articulable suspicion to approach that particular defendant because he satisfied a "drug courier profile." In the examination area, the defendant "consented" to a request to open his suitcase, at which time drugs were discovered. There, like here, the state neglected to get a search warrant first. The Court held that this was an illegal search, and it rejected the government's argument that the "consent" was voluntary because it had been induced by the government's conduct that was violative of the defendant's Fourth Amendment rights. The court observed,

> The person approached [by the police], however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way . . . he may not be detained even momentarily without reasonable, objective grounds for so doing; and his refusal to listen or answer does not, without more, furnish those grounds. (Emphasis added). Id. at 497-98.

In short, a citizen's peaceful refusal to comply with an unlawful order cannot be used to justify the subsequent search.

In Florida v. Bostick, 501 U.S. 428 (1991), the Supreme Court addressed a situation where the police boarded a bus and asked permission to search a

passenger's luggage.  The court remanded for further findings on the

voluntariness of the defendant's alleged consent, but in doing so reiterated,

> We have consistently held that a refusal to cooperate, without more,
> does not furnish the minimal level of objective justification needed
> for a detention or seizure.  Id. at 437.

The law is replete with situations where the factfinder is precluded from

drawing any adverse inferences from the fact that a person insists upon his or her

legal rights.  For example, the fact that a defendant chooses to exercise his or her

Fifth Amendment right to remain silent will not sustain an inference of guilt.

Griffin v. California, 380 U.S. 609, 613-14 (1965).  The same is true here.  A

defendant cannot be deemed to be acting unreasonably and objectively to have

abandoned his or her property merely by refusing to comply with an unlawful

order.  United States v. Hernandez, 7 F.3d 944, 947 (10th Cir. 1993) ("[A]n

abandonment is not voluntary when it results from a Fourth Amendment

violation."); United States v. King, 990 F.2d 1552, 1564 (10th Cir. 1993) (same).

The district court relied exclusively on United States v. Hernandez, 7 F.3d

944 (10th Cir. 1993).  That case, however, is clearly distinguishable.  There, the

United States border patrol agents boarded a Greyhound bus at a permanent

border check point.  While questioning the passengers regarding citizenship, one

of the agents noted a backpack in an overhead storage compartment with no one

sitting beneath it.  The agents asked several of the passengers seated nearby if the

backpack belonged to them. When they all replied that it did not, the agent asked several times in a loud voice to everyone on the bus whether any of them owned the backpack. During this questioning, he scanned the entire bus and made eye contact with each passenger. Once again, he received no affirmative response. Finally, the agent picked up the backpack, and holding it in the air once again asked everyone on the bus if anyone owned it. Again, he received no response. At that point, the agent removed the backpack from the bus, subjected it to a dog sniff, and ultimately searched it. It was undisputed there that the defendant was on the bus during these inquiries, and declined to claim the backpack. As the defendant stepped down from the bus, he explicitly denied ownership of the backpack. From these facts, the court there found abandonment.

Each of the salient facts in Hernandez are missing here. In the first place, Hernandez was explicitly asked if he owned the backpack and his silence reasonably could be construed as a denial. Garzon was never so asked. Second, Hernandez explicitly disclaimed ownership. Garzon did not. Third, Hernandez had placed the backpack in a different part of the bus from where he was sitting, which was some evidence in that uncrowded bus that he intended to disassociate himself from the backpack. Here, at the time of the search, the officers had no idea who owned the backpack, or whether it was physically close to the owner during the bus ride. Finally, in Hernandez, the setting was an inspection area of a

permanent border patrol check point, where additional latitude is allowed to the government for purposes of controlling immigration and drug smuggling. In the case of Garzon, the stop occurred neither near the border nor at an established check point.

Every case in which we have found abandonment involved a situation where the defendant either (1) explicitly disclaimed an interest in the object, or (2) unambiguously engaged in physical conduct that constituted abandonment. For example, in United States v. Austin, 66 F.3d 1115 (10th Cir. 1995), the defendant entrusted his luggage to a total stranger at the airport. The stranger, concerned that it might contain a bomb, turned it over to airport security. We held that releasing luggage to a total stranger constitutes abandonment, at least until such time as it is recovered. In United States v. Jones, 707 F.2d 1169 (10th Cir. 1983), the defendant threw away a knapsack while being chased by the police. We held that the physical act of discarding the knapsack on to public property where it could be picked up by anyone constituted abandonment. By contrast, Garzon never verbally disclaimed an interest in his backpacks; he never discarded the backpacks on to public property; and he did not entrust the backpacks to complete strangers. Rather, he left the backpacks where the bus company told him he had a legal right to leave them during the layover in Denver. But for the police officer's unlawful order, the backpacks were exactly where they

should have been -- in the secure safekeeping of the bus company, in the internal cabin of the bus, while he was nearby in the station awaiting the continuation of his trip.[3]

We conclude that the district court's ruling that Garzon objectively abandoned his backpacks when he refused peacefully to comply with an unlawful order to remove them from the bus and to submit them to a dog sniff was in error. Therefore, we REVERSE, and REMAND for further proceedings consistent with this opinion.

_____

[3]The dissent postulates that there are two alternative explanations of Garzon's leaving the bags on the bus, i.e., either he believed he had a right to do so, or he decided to abandon the bags in the face of an order he believed was lawful, but which in fact was not. The first explanation leads to a conclusion that no abandonment occurred because, if Garzon correctly believed he had a right to disregard the order, he never in fact relinquished his interest in the property.

Likewise, the second explanation also leads to a conclusion that there was no abandonment as a matter of law. Abandonment must be voluntary, and a defendant's response to an unlawful police order is not voluntary, regardless of whether the defendant realizes that the order was unlawful. "'Abandonment will not be recognized when it is the result of prior illegal police conduct.'" United States v. Ward, 961 F.2d 1526, 1535 (10th Cir. 1992) (quoting United States v. Brady, 842 F.2d 1313, 1315 n. 7 (D.C. Cir. 1988)). If Garzon abandoned the bags, he did so as a result of the officer's illegal order, whether he knew the order was illegal or not. The only fact the district court relied on in finding abandonment was Garzon's response to the unlawful police order. However, an abandonment that results from unlawful police conduct is not cognizable as a matter of law. United States v. Hernandez, 7 F.3d 944, 947 (10th Cir. 1993). Thus, there was no abandonment here.

We also note that the district court made a factual finding that Garzon did not intend subjectively to abandon his property. That finding would seem to preclude the second explanation postulated by the dissent.

- 16 -

**No. 96-1197, *United States v. Garzon***

**Porfilio, J., dissenting:**

I must respectfully dissent. I think the court has announced a standard for review of the issue of abandonment not previously adopted in this circuit. Relying upon *United States v. Austin*, 66 F.3d 1115, 1118-19 (10th Cir. 1995), the majority hypothesizes there is an objective component of abandonment that we must review *de novo*. I do not find support for that bifurcation of the issue in *Austin.*

Indeed, in *Austin*, the court relied only upon the oft-reiterated principle that abandonment is an issue of fact that is reviewed for clear error. *Id.* at 1117. Moreover, the court's analysis of the reasonability of the search in *Austin* proceeded from that premise. As that analysis developed, the court viewed the defendant's privacy expectations which were necessary to support his Fourth Amendment claim, and reminded such a claim cannot be asserted when abandoned property is searched. From that point, the court reviewed the facts of the case and determined though the defendant could assert a subjective belief that he had retained his <u>expectation of privacy</u>, that belief was not objectively reasonable. Yet, in no way did the court retreat from the premise that the district court's finding of abandonment is a question of fact reviewed for clear error. With all due respect, I believe the majority takes the rationale of *Austin* a step beyond which the case really goes, and I cannot join that effort.

Moreover, because a district court's finding of abandonment can only be overturned for clear error, the very ambiguity of Mr. Garzon's acts is the key to resolution of the issue on appeal. Either Mr. Garzon chose to ignore Agent Olachea's directive to remove his baggage from the bus because he believed he had a right to do so, or he abandoned it. Those are the only two choices faced by the district court, and "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 40 U.S. 564, 573-74 (1985). In this case, I believe the district court correctly found Mr. Garzon manifested an objective intent to abandon the two bags he left on the bus.

Having heard Agent Olachea's representation that passengers were going to pass their hand luggage past a "narcotics detection dog," Mr. Garzon took an innocent backpack with him and left two drug filled packs behind. Although it is true, as noted by the court, that Agent Olachea's directive lacked validity, Mr. Garzon obviously knew about the possibility of detection by the dog and left drug filled luggage on the bus, taking with him only that which presented no threat to his freedom. To me, this act begets only one inference: that he intended to distance himself from the potentially incriminating backpacks in hopes their contents would not be tied to him.

Although the agents could have made Mr. Garzon's intent even more clear by asking him about the ownership of the bags, I do not view their failure critical. Given the state of the evidence, the district court had only two inferences to draw: either Mr. Garzon left the bags in the bus because he thought he could do so, or he abandoned them. The district court chose to draw the second inference, and evidence supports the choice. We cannot eschew that result. I would affirm the judgment.