**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Brian Lee VAN DAM, Defendant–**
**Appellant.**

**No. 01–4146.**

United States Court of Appeals,
Tenth Circuit.

June 11, 2002.

Before BRISCOE, Circuit Judge, BRORBY, Senior Circuit Judge, and MURPHY, Circuit Judge.

## ORDER AND JUDGMENT *

BRISCOE, Circuit Judge.

After entering a conditional plea of guilty to one count of possession of a fire-arm by a restricted person (a violation of 18 U.S.C. ·§ 922(g)), defendant Brian Lee Van Dam appeals the denial of his motion to suppress evidence. We affirm.

### I.

During the early morning hours of September 7, 2000, Deputy Nathan Harris of the Salt Lake County Sheriff's Office was on patrol when he noticed a Mercedes with Florida license plates parked at an Amoco station near a pay phone. A man later identified as defendant and a woman were walking back to the car from the phone. Approximately ten minutes later, Harris saw the Mercedes parked near a pay phone at a Chevron station. Defendant was at the phone and the woman was inside the station. Harris decided to stop to see if they needed help. When Harris pulled his vehicle behind the Mercedes, he noticed the license tag had expired. Defendant had returned to the car and was sitting in the front passenger seat. Harris walked to the Mercedes and advised defendant that the license tag had expired and asked if defendant needed directions. He also asked if defendant had the car registration. In response to Harris' questions, defendant stated that he was from the area, that the Mercedes was from Florida and he did not have the registration. Defendant also stated that he did not have a driver's license or any identification. Defendant stated that his name was "something Jones" and that the woman was driving the Mercedes. Harris thought ·that defendant looked "apprehensive."

Harris went into the Chevron station to talk to the woman. The woman had been at the counter but when she saw Harris,

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

she went into the women's restroom. Harris waited outside the door to the restroom for a few minutes and then knocked on the door, identified himself, and told the woman he needed to speak to her. The woman stated that the Mercedes belonged to a friend who lived "up the road." She told Harris that defendant's name was Brian Van Dam and that he was the driver of the Mercedes. Neither the woman nor the defendant claimed ownership of the Mercedes.

Deputy Carry Knighton arrived at the scene and decided they should conduct a "*Terry* frisk" because of the conflicting information defendant and the woman had provided concerning defendant's identity, that neither claimed ownership of the Mercedes, and that each claimed the other was the driver. Knighton frisked defendant and found two wallets in his back pocket. Knighton thought it was strange that defendant had two wallets and thought that the wallets might contain identification information. Upon opening one of the wallets, Knighton discovered a baggie with a substance that looked like methamphetamine. Harris told defendant he was under arrest and ordered him to place his hands on his head. However, defendant broke away and ran. After an unsuccessful pursuit of defendant, the officers decided to impound the Mercedes. Prior to the tow truck's arrival, Harris conducted an inventory search of the Mercedes as part of the routine impounding process. He found a briefcase that contained a journal, court papers with defendant's name on them, a loaded semi-automatic handgun, and a picture of defendant lying in bed with money spread over him and a gun in his hand.

Defendant was indicted by a grand jury on one count of possession of a firearm by a restricted person, in violation of 18 U.S.C. § 922(g). He filed a motion to suppress the handgun that was found in the briefcase, arguing it was the fruit of an unlawful search. In denying the motion, the district court found that even though the opening of defendant's wallet may have exceeded the lawful scope of a *Terry* frisk, the briefcase and its contents inevitably would have been discovered through lawful means because Harris had sufficient basis to lawfully impound the Mercedes. The court found that the reasons given for the inventory search were "to protect the interest of the true owner of the vehicle and to protect the sheriff's office from potential claims," and that "these reasons have consistently been held to justify an inventory search." ROA, Vol. I, Order at 10. Defendant entered a conditional plea of guilty, reserving the right to appeal the denial of his motion to suppress.

## II.

In reviewing the district court's refusal to grant a suppression motion, we accept the district court's factual findings absent clear error and review de novo the district court's determination of reasonableness under the Fourth Amendment. *See United States v. Angevine*, 281 F.3d 1130, 1133 (10th Cir.2002).

▮ Defendant contends the seizing and opening of his wallet were improper and that all of the evidence found thereafter should be suppressed as fruit of the poisonous tree because it emanated from the unlawful search. Defendant argues that a *Terry* frisk of his person was not justified because the officers did not have a reasonable articulable suspicion that he was armed and dangerous. The wallet was discovered and opened pursuant to a *Terry* search. The Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV. Under *Terry*, this court determines the reasonableness of a search or seizure by

conducting a dual inquiry, asking first "whether the officer's action was justified at its inception," and second, "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir.2001) (en banc). We need not consider whether the search in question was valid under *Terry*, however, because we conclude the officers' search was lawful based on our determination that the officers had probable cause to arrest the defendant at the time of the search. *See Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (holding that a search incident to a lawful arrest may precede the arrest, as long as the arrest follows quickly thereafter).

The Fourth Amendment allows officers to conduct a warrantless search of a person where the search is incident to the lawful arrest of that person. *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir.1998). Such a search is not limited to a pat-down for weapons but may be a search for evidence of a crime. *United States v. McKissick*, 204 F.3d 1282, 1296 (10th Cir.2000). Probable cause is measured against an objective standard and evaluated in relation to the circumstances as they would appear to a prudent, cautious and trained police officer. *United States v. Treto–Haro*, 287 F.3d 1000, 1005 (10th Cir.2002). "The subjective belief of an individual officer as to whether probable cause existed for detaining a criminal suspect is not dispositive. That an officer did not believe probable cause existed to detain a suspect does not preclude the Government from justifying the suspect's detention by establishing probable cause." *Id.*

At the time of the search, the officers knew that defendant had identified himself with a different name than had been provided by the woman. The officers had probable cause to believe defendant had given a false name to mislead Harris as to his identity, in violation of Utah Code Ann. § 76–8–507 ("A person commits a class C misdemeanor if, with intent of misleading a peace officer as to his identity, birth date, or place of residence, he knowingly gives a false name ... to a peace officer in the lawful discharge of his official duties.") The officers were authorized under Utah law to arrest defendant for that offense. The search that was subsequently conducted was designed to determine defendant's identification. We conclude the officers had probable cause to search defendant's wallet.

■ Defendant contends that, even if the frisk and subsequent search of the wallet were legal, the opening of the briefcase as part of an inventory search in connection with the impounding of the Mercedes was improper. He argues the government failed to meet its burden to show that the search was a proper inventory search because it failed to show it had specific policies in place to govern the opening of closed containers during an inventory search.

The government makes the threshold argument that defendant does not have standing to assert a Fourth Amendment claim regarding the search of the briefcase because he abandoned the briefcase when he ran to avoid arrest. The district court made no findings with respect to abandonment. However, we can uphold the denial of a motion to suppress if there is any reasonable view of the evidence to support the denial. This court can address whether abandonment occurred even though the district court made no findings regarding abandonment. *See United States v. Morgan*, 936 F.2d 1561, 1570 (10th Cir.1991).

"The test for abandonment is whether an individual has retained any reasonable

expectation of privacy in the object." *United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir.1997). "Abandonment is akin to the issue of standing because a defendant lacks standing to complain of an illegal search or seizure of property that has been abandoned." *Id.* First, the court asks whether the person had a subjective expectation of privacy, and then asks whether the person retained an objectively reasonable expectation of privacy that society will recognize. *See id.*

It is undisputed that defendant ran after he was told that he was under arrest, leaving the briefcase in the Mercedes. He made no attempt to protect the briefcase from inspection. While it is true that his abandonment was because he was trying to avoid being taken into custody, we have held that the existence of police pursuit at the time of abandonment does not of itself render the abandonment involuntary. *See Morgan*, 936 F.2d at 1570; *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983). Since defendant did not express any intent to retain ownership of the briefcase, he is deemed to have voluntarily abandoned it.

Further, even if defendant could be found to have subjectively retained an expectation of privacy in the briefcase, such an expectation is not objectively reasonable. The briefcase was left in a vehicle in which defendant did not claim ownership. Defendant had no guarantee that even if his female companion claimed ownership of the car, she would refuse permission to the police to open the briefcase. As a result, defendant abandoned the property and has no standing to challenge its search.

AFFIRMED.