**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**November 10, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DEANNA SHELTON; CHLOE
JENNINGS,

    Plaintiffs - Appellants,

v.

CITY OF LOCUST GROVE,
OKLAHOMA, a municipal
corporation; JASON WILLIAMS, in
his official and individual capacity;
CLAY HALL, in his official and
individual capacity; BRETT
RUSSELL, in his official and
individual capacity,

    Defendants - Appellees.

No. 24-5076
(D.C. No. 4:23-CV-00274-JFH-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **MATHESON**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.

_____

Plaintiffs Deanna Shelton and Chloe Jennings contest the district court's

dismissal of their claims arising from the shooting and killing of two dogs by

police officers Clay Hall and Brett Russell of the City of Locust Grove police

department. Shelton and Jennings sued the two officers, the City of Locust

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

Grove, and its mayor under 42 U.S.C. § 1983, alleging a Fourth Amendment violation, as well as state tort claims for intentional infliction of emotional distress and "Negligence/Conversion." In addition, Shelton and Jennings sought a temporary and permanent injunction prohibiting Locust Grove and its officers from seizing and shooting loose dogs without complying with local ordinances or state law.

The Defendants filed a motion to dismiss, and the district court granted it. The court rejected the Fourth Amendment claim on standing grounds, ruling that Jennings had no ownership interest in the dogs and that Shelton abandoned her ownership interest by deeming the dogs strays and allowing the officers to take them. The court also dismissed the state law claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

In its order granting the motion to dismiss, the district court treated all well-pleaded allegations as true and gave Plaintiffs the benefit of all reasonable inferences. From that, the court summarized the allegations of the Plaintiffs' Second Amended Complaint (SAC) as follows:

> In 2021, Plaintiff Shelton's male dog, Titan, and Plaintiff Jennings' female dog, Zo, were bred and, as a result, the dogs Sancho and Zeke were born in August of 2021. At all times relevant to Plaintiffs' claims, Sancho and Zeke were owned by and in the possession of Plaintiff Shelton "with the consent of Plaintiff Jennings."
>
> On August 11, 2022, at about 9:00 p.m., Plaintiff Shelton drove down the street to her home and saw Locust Grove

2

Police Department Officers Clay Hall ("Officer Hall") and Brett Russell ("Officer Russell") in the front yard of her home speaking with Plaintiff Jennings. Pet dogs Sancho and Zeke were also present in the front yard. Before Plaintiff Shelton joined them, Officer Hall and Officer Russell asked [Plaintiff] Jennings if they could take the dogs to the pound. [Plaintiff] Jennings said yes but specified that they could only take them if they were "taking them to the Pound in Pryor." Promising that he would, Officer Hall responded that they "would take the dogs to the City of Pryor pound and try to find them a home."

Once Plaintiff Shelton arrived, Officer Hall and Officer Russell advised her that she would be issued tickets for her dogs being "at large" because they were not contained in her fenced backyard. Plaintiff Shelton then called Locust Grove Mayor Jason Williams ("Mayor Williams") and requested his presence at her home. Mayor Williams arrived about five (5) minutes later. Again, Officer Hall and Officer Russell advised Plaintiff Shelton that she would be issued tickets for her dogs being at large. Plaintiff Shelton advised the officers that she could not afford to pay a fine if she were ticketed. Officer Hall and Officer Russell then advised Plaintiff Shelton that she had two options: 1) be ticketed for Sancho and Zeke being at large, or 2) claim that Sancho and Zeke were strays and abandon them to the officers. Because she could not afford to pay a fine if ticketed, Plaintiff Shelton felt that she had no other choice but to abandon the dogs. It was Plaintiff Shelton's expectation that any abandonment of Sancho and Zeke was only temporary and that they would be held at the dog pound in Pryor, Oklahoma until she "could figure out what to do."

Once Plaintiff Shelton advised that she was abandoning the dogs, Officer Hall and Officer Russell loaded Sancho and Zeke into the animal control truck that Officer Hall was driving. At that time, Mayor Williams directed that Sancho and Zeke be "put down, or euthanized."

Nine (9) days later, on August 20, 2022, Plaintiff Shelton opened her back door and discovered Sancho in her backyard. Sancho had a wound at the top of his skull, an injured right eye, a swollen face, and was covered in mud. Plaintiff Shelton brought Sancho inside her home and called the police. Officer

3

Hall arrived shortly thereafter. Upon seeing Sancho, Officer Hall explained that after leaving with Sancho and Zeke on August 11, he and Officer Russell "shot the dogs" and "threw them out." Officer Hall admitted his surprise that Sancho had made it back to Plaintiff Shelton's home because he had believed that both dogs were dead. Officer Hall then attempted to take Sancho, indicating that he was going to shoot him again. Plaintiff Shelton refused to turn Sancho over to Officer Hall.

*Shelton v. City of Locust Grove*, No. 23-CV-274, 2024 WL 2946570, at *5

(N.D. Okla., June 11, 2024) (citation modified).[1]

In addition to these factual allegations, Plaintiffs in their Second Amended Complaint quote and rely on this portion of Officer Hall's police report on that evening's events:

As we finished securing the dogs after Chloe allegedly "declared them as strays" in the bed of my unit, I asked Assistant Chief Russell and Jason Williams if we were going to put the dogs down. Jason nodded his head and verbally stated "yes" . . . . I then transported the dogs to the City's property on North Wyandotte and the dogs were euthanized.

R. at 23 (citation modified).

The district court concluded that it could rely on the entirety of this police report because it was central to the Plaintiff's claims and not disputed as authentic. In doing so, the district court summarized a different part of the police report:

Further, the police report indicates that the Locust Grove Police Department received a call complaining of dogs at large and, when Officer Russell appeared at the scene, Sancho and

---

[1] Appellants do not dispute the accuracy of the district court's recitation of the facts alleged in the SAC.

Zeke were in Plaintiff Shelton's neighbor's yard. ("I am familiar with these dogs due to them being reported at large on multiple occasions.")

*Shelton*, 2024 WL 2946570, at *4 (citation omitted). The district court relied on these facts to decide that Shelton had abandoned the dogs and thus lacked a possessory interest in them, as needed for a Fourth Amendment claim. This part of the police report referred to activities before Shelton's arrival at home and thus does not contradict the SAC.

## DISCUSSION

### I. Standard of Review

We review de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025). "To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint's allegations must plausibly state a claim and cannot be speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). We accept as true all well-pleaded factual allegations in the complaint, and we consider them in the light most favorable to the nonmoving party. *Brown*, 124 F.4th at 1263.

### II. Article III Standing

The district court briefly mentioned Article III standing, but the court thereafter focused on so-called Fourth Amendment standing. *Shelton*, 2024 WL

2946570, at *3–4. The two concepts differ. Fourth Amendment standing "should not be confused with Article III standing." *Byrd v. United States*, 584 U.S. 395, 410 (2018). Article III standing is jurisdictional, *id.*, but Fourth Amendment standing is not, *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1235 n.12 (10th Cir. 2010).

To establish Article III standing, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief. *Food and Drug Admin. v. All. For Hippocratic Med.*, 602 U.S. 367 (2024). We address Jennings's standing before turning to Shelton's.

## A.    Jennings's Lack of Article III Standing

The district court ruled that the SAC did not present a plausible claim that Jennings had a possessory interest in the two dogs under the Fourth Amendment. *Shelton*, 2024 WL 2946570, at *3. In the SAC, Plaintiffs allege that the two dogs were "fully owned by and in the possession of Plaintiff Shelton . . . at all times relevant to the claims raised herein." R. at 21. The court noted that, after adding Jennings as a plaintiff, the SAC alleged that Jennings "*may* have had some right, title and interest in the dogs by virtue of her dog being the mother of Sancho and Zeke." *Shelton*, 2024 WL 2946570, at *3. The court deemed this allegation insufficient for a possessory interest under the Fourth Amendment. *Id.* So the district court concluded that because the

6

SAC alleged that Shelton fully owned the dogs, "Jennings lack[ed] standing and ha[d] failed to state a claim under any theory of relief in the Second Amended Complaint." *Id.* It thus granted the motion to dismiss "as to Plaintiff Jennings." *Id.*

On appeal, Shelton and Jennings argue that the district court "decided disputed issues of fact when it found that Jennings . . . lacked any ownership or possessory interest in the dogs." Op. Br. at 2. Shelton and Jennings further contend that the "court did not treat the complaint allegations as true in granting the [rule] 12(b)(6) motion to dismiss." *Id.* This is wrong. As mentioned, the SAC alleges that Shelton fully owned the dogs. So the SAC's allegations themselves demonstrate that Jennings never suffered an injury in fact to satisfy Article III standing. *See Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1325 (10th Cir. 2022) (stating that standing has an injury-in-fact requirement). So we conclude that the SAC's allegations do not establish Article III standing for Jennings to pursue a Fourth Amendment claim.

**B.    Shelton's Article III Standing**

In contrast, because the SAC alleges that Shelton fully owned the dogs, she pleaded sufficient facts to satisfy Article III's injury-in-fact requirement. She alleged an injury to a possessory interest in the two dogs. Her Article III standing remains whether or not she abandoned Sancho and Zeke. That is because Article III standing and so-called Fourth Amendment "standing" are different. As we have stated, "the question of whether a party can show a

7

violation of its Fourth Amendment rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Id.*; *see also Rakas v. Illinois*, 439 U.S. 128, 140 (1978). The Supreme Court has cautioned us not to "jurisdictionalize" merits considerations. *See, e.g.*, *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) ("We treat a rule as jurisdictional only if Congress clearly states that it is." (citation omitted)). And the abandonment question "does not speak in jurisdictional terms." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006). Thus, "a party's abandonment of a place or thing runs to the merits of his Fourth Amendment [claim]," *United States v. Ross*, 963 F.3d 1056, 1063–66 (11th Cir. 2020) (en banc), and "not his Article III standing," *id.* at 1057. For those reasons, Shelton has Article III standing to pursue a Fourth Amendment claim.

## III.    Shelton's Fourth Amendment Claim

Shelton makes several arguments for reversal, which we address in turn. Because Jennings lacks Article III standing, we do not consider her claim further. But in examining Shelton's claim, we begin by recognizing that "Fourth Amendment rights are personal . . . ." *United States v. Mosley*, 743 F.3d 1317, 1322 (10th Cir. 2014) (citation omitted). So a plaintiff cannot claim a violation of her Fourth Amendment right against unlawful seizure based only on an illegal seizure of a third person's property. *See id.* With that in mind, we consider the SAC's allegations about Shelton's possessory interests in the two dogs.

8

The district court acknowledged that the SAC alleged that Shelton had a sufficient ownership interest in the two dogs to proceed with a Fourth Amendment claim. *Shelton*, 2024 WL 2946570, at *4. Further, we agree with Shelton that an officer's killing of a dog "meaningfully and permanently interferes with the owner's possessory interest" in the dog and "therefore constitutes a violation of the owner's Fourth Amendment rights absent a warrant or some exception to the warrant requirement." *Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016); *see also Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2014) ("[T]here is a constitutional right under the Fourth Amendment to not have one's dog unreasonably seized."); *Altman v. City of High Point*, 330 F.3d 194, 203 (4th Cir. 2003) ("[P]rivately owned dogs [are] 'effects' subject to the protections of the Fourth Amendment."). The question is whether Shelton had abandoned her possessory interest.

### A.    Abandonment of the Two Dogs

In evaluating Shelton's Fourth Amendment claim, the district court noted that "'[one] lacks standing to complain of an illegal search [or seizure] . . . of property which has been abandoned.'" *Shelton*, 2024 WL 2946570, at *4 (quoting *United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997)). It further noted that "[a]bandonment may be inferred from words, acts, and other objective facts." *Id.* Though it acknowledged Shelton's argument that she did not "subjectively" abandon the two dogs, the court found her allegations

9

insufficient to preserve her Fourth Amendment interest. *Id.* The district court required that Shelton had "allege[d] that this expectation was expressed to Officer Hall and Officer Russell" and noted that she failed to allege that "the parties agreed to such an arrangement." *Id.* For these reasons the court determined that the officers "were entitled to take Plaintiff Shelton at her word: she was abandoning the dogs." *Id.* (citing *United States v. Denny*, 441 F.3d 1220, 1228 (10th Cir. 2006)). The court deemed her claimed subjective intent "of no consequence" in view of "her affirmative denial of ownership." *Id.*

We agree with the district court's analysis.[2] We have stated that "[w]hether abandonment has occurred is an objective inquiry based [on] words spoken, acts done, and other objective facts." *United States v. Porter*, 66 F.4th 1223, 1226 (10th Cir. 2023) (citation omitted). Some of our cases indicate that abandonment has both a subjective and objective component. *See id.* at 1226 n.2; *United States v. Juszczyk*, 844 F.3d 1213, 1214 (10th Cir. 2017) ("Abandonment contains subjective and objective components."). So even if a person retains a subjective expectation of privacy in an item—that is, even if she shows she did not subjectively intend to abandon it—her expectation of privacy must still be objectively reasonable. *See Garzon*, 119 F.3d at 149–50. Thus, "[a]bandonment occurs if *either* (1) the owner subjectively intended to relinquish ownership of the property *or* (2) the owner lacks an objectively

---

[2] We join the district court "in no way endors[ing] or condon[ing] what happened to Sancho and Zeke." *Shelton*, 2024 WL 2946570, at *5 n.2.

reasonable expectation of privacy in the property." *United States v. Easley*, 911 F.3d 1074, 1083 (10th Cir. 2018) (emphasis added).

Shelton is wrong that the district court "decid[ed] disputed issues of fact that Shelton freely and voluntarily surrendered Sancho and Zeke." Op. Br. at 2. Instead, the district court properly considered the SAC's allegations, and those defeated Shelton's claim.

### B.    Voluntariness: Probable Cause

Shelton contends that her abandonment of the two dogs was not knowing and voluntary. Specifically, she argues that the officers coerced her abandonment by threatening to ticket her for dogs at large when the officers lacked probable cause for that offense. *Id.*

We note that the officers' threatened ticketing by itself does not make Shelton's abandonment involuntary. *See, e.g.*, *United States v. Morgan*, 936 F.2d 1561, 1570 (10th Cir. 1991) ("[T]he existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary." (citation omitted))*;see Easley*, 911 F.3d at 1083 (explaining that feeling "pressure while under police investigation" does not render abandonment involuntary). Shelton argues that the officers' threat of citations without probable cause rendered her abandonment involuntary. Even assuming this theory has merit, the officers possessed probable cause to issue the citations. The officers suspected that the two dogs were outside of Shelton's fenced backyard. And the district court ruled that alone furnished the needed

11

probable cause. *Shelton*, 2024 WL 2946570, at *4 (citing the SAC for the statement that "Officers Hall and Russell were in her front yard [and] Sancho and Zeke were present").

In finding probable cause for a dogs-at-large citation, the district court also relied on the dogs having been in the neighbor's yard before Shelton arrived that evening. *Id.* The court summarized Officer Hall's police report:

> [T]he police report indicates that the Locust Grove Police Department received a call complaining of dogs at large and, when Officer Russell appeared at the scene, Sancho and Zeke were in Plaintiff Shelton's neighbor's yard. See Dkt. No. 22-1 at 6 ("I am familiar with these dogs due to them being reported at large on multiple occasions.").

*Id.* The district court relied on this portion of the report after seeing that Shelton had quoted a portion of the same report in the SAC. *Id.* From that, the court determined that it had discretion to consider the report and, after doing so, it concluded that the officers had probable cause for the alleged violation. *Id.*

The parties disagree about whether the district court could rely on information from the police report. As mentioned, the district court did so after ruling that the report was central to Shelton's claim and that no one disputed its authenticity. *Shelton*, 2024 WL 2946570, at *3. From that, the court concluded it had "discretion to consider the document as part of the pleadings." *Id.* at *2 (citing *Prager v. LaFaver*, 180 F.3d 1185, 1188–89 (10th Cir. 1999)); *cf. Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024) (stating that, on a

12

motion to dismiss, courts may consider documents referred to in the complaint that are central to the complaint).

We conclude that the district court did not err by relying on the police report's information about the two dogs' earlier location and we note that the SAC does not contradict the police report.[3] We review for abuse of discretion a district court's decision to incorporate documents by reference into its Rule 12(b)(6) analysis. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

First, we note that Shelton does not explain how the district court erred by relying on the police report. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (explaining which materials can be reviewed on a Rule 12(b)(6) motion). In fact, Shelton addresses the police report just once in her appellate brief—and even then just in their statement of issues. So they have waived the issue by inadequately briefing it. *See Tachias v. Sanders*, 130 F.4th 836, 843 (10th Cir. 2025).

Second, her argument loses force by relying on facts not alleged in the SAC but mentioned in the report: (1) that the officers told Shelton that "they knew the dogs were hers," (2) that they knew "she had been taking care of them

---

[3] When a properly considered document and a complaint's allegations conflict, the document's factual averments control. For instance, in *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, we noted that "[w]hen a complaint includes an attached exhibit the exhibit's legal effect is to be determined by its terms rather by the allegations of the pleader." 861 F.3d 1081, 1105 (citation omitted).

since October," and (3) that "they had a previous complaint about her and the dogs." Op. Br. at 5.[4]

For each of these reasons, we reject Shelton's challenge to the district court's use of the police report. We agree with the district court that the officers had two independent bases for probable cause to issue a citation for Shelton's at large dogs.

### C.    Voluntariness: Knowing Full Consequences

Shelton contests the voluntariness of her abandonment of the two dogs on the ground that she only "temporarily" agreed to abandon the dogs with the expectation that they would be taken to the pound "until [she] could figure out how to get them back." Op. Br. at 4, 19. Shelton contends that "[a] motion to dismiss cannot consider evidentiary items and the trial court can't decide evidence disputed facts [sic], beyond a reasonable doubt, in a motion to dismiss." *Id.* at 3. Along this line, she also argues that the district court "resolved disputed issues of fact in favor of the Defendants in finding as a matter of law that Shelton freely and voluntarily abandoned Sancho and Zeke." *Id.* at 4. Shelton disputes the district court's rulings (1) that she "didn't tell the officers her intent to figure out how to retrieve the dogs from the pound," *id.*, and (2) that she did not "allege that the parties reached such an agreement" *id.* (quoting *Shelton*, 2024 WL 2946570, at *4). Finally, she argues that "[t]he

---

[4] For these matters, Shelton cites the SAC, but the SAC does not contain these allegations. *See* R. at 22.

burden is on the Defendants to prove consent was free, voluntary, without duress or coercion." *Id.* at 3. They argue that "those fact based issues cannot be decided in a motion to dismiss, which only tests the law." *Id.*

All this misperceives the law and the district court's reasoning. At the motion-to-dismiss stage, the district court's task is to determine whether a plaintiff's well-pleaded factual allegations plausibly state a claim. The district court viewed Shelton's allegations in the light most favorable to her and treated her well-pleaded allegations as true. The problem for Shelton is that she still did not state a plausible claim—that is, the SAC did not allege that the officers, the mayor, or the city had any objective basis to know of her subjective intent to reclaim the dogs. *Shelton*, 2024 WL 2946570, at *4. But as the Defendants pointed out at oral argument, and as Shelton admitted, the SAC does not allege that she did anything to reclaim the dogs in the days leading up to Sancho making his way home. Indeed, Shelton acknowledged that the dogs became adoptable after seventy-two hours, several days before Sancho's return.[5] We see nothing supporting Shelton's claim that the district court resolved any disputed facts against her. We agree with the district court's analysis.

---

[5] In addition, Shelton has not shown how the officers' and mayor's noncompliance with state or local laws on post-seizure conduct rendered this seizure unlawful under the Fourth Amendment. *Cf. Virginia v. Moore*, 553 U.S. 164, 172 (2008) (stating that Fourth Amendment protections against seizures do not depend on "local law enforcement practices—even practices set by rule"). Nor has Shelton explained how she could assert a right to reclaim the dogs when she had just abandoned the dogs as strays.

**D.    Other Issues**

For the first time on appeal, Shelton mentions Fourteenth Amendment substantive and procedural due-process violations. She did not raise such claims in the SAC and cannot amend it on appeal through appellate briefing. *See Adams by and through Kasper v. Sch. Bd. of St. John's Cnty.*, 57 F.4th 791, 799 n.2 (11th Cir. 2022) (en banc) (stating that a plaintiff "cannot amend the complaint by arguments made in an appellate brief"). In addition, the opening brief doesn't sufficiently develop the argument, so we decline to address it on that basis too. *See SCO Grp., Inc. v. Novell, Inc.*, 578 F3d 1201, 1226 (10th Cir. 2009) ("An issue or argument insufficiently raised in a party's opening brief is waived.").

Finally, Shelton contends that the officers violated Oklahoma law allowing the warrantless seizure of a "potentially dangerous dog" under only limited circumstances. Okla. Stat. tit. 4, §§ 41(C)–(E), 44. These Oklahoma statutes concern a situation unlike the one presented here. No one contends that the police seized the two dogs as potentially dangerous. And nothing about this statute affects an owner's ability to abandon her dogs as strays to avoid being ticketed and having to appear in court to defend or to pay the ticket.

16

## CONCLUSION

For the foregoing reasons, we affirm.

Entered for the Court


Gregory A. Phillips
Circuit Judge